STATE of Wisconsin, Plaintiff-Respondent,

v.

Joseph W. PERRY, Defendant-Appellant.†

Court of Appeals

*No. 97–0847–CR. Submitted on briefs October 2, 1997.—Decided December 18, 1997.*

(Also reported in 573 N.W.2d 876.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Donald T. Lang,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Mary V. Bowman,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

Before Eich, C.J., Roggensack and Deininger, JJ.

DEININGER, J. Joseph Perry appeals a judgment convicting him after a bench trial of four counts of uttering a forged writing, in violation of § 943.38(2), STATS.[1] Perry claims there was insufficient evidence to convict him of the charges because the

---

[1] Section 943.38, STATS., provides in relevant part, as follows:

(1)   Whoever with intent to defraud falsely makes or alters a writing or object of any of the following kinds so that it purports to have been made by another, or at another time, or with different

forged items he uttered were not writings "whereby legal rights or obligations are created, terminated or transferred" as required under § 943.38(1)(a). We disagree and affirm his convictions. He also claims the trial court erred in permitting the State to amend the information to add two additional counts of forgery that were not transactionally related to the three originally charged. We conclude, however, that he forfeited this claim by failing to object to the amendment of the information in the trial court.

Perry also appeals a subsequent order which directs him to pay restitution and extradition costs. He claims that the trial court improperly ordered that he pay $1,235 in extradition costs after he had been sentenced and a judgment of conviction had been entered. We agree that the payment of costs not imposed at sentencing cannot be ordered at a later time. We therefore reverse the postconviction order which set the amount of restitution and assessed the extradition costs, and we remand for entry of a proper order.

## BACKGROUND

The State filed a criminal complaint charging Perry with three counts of uttering a forged writing, in

provisions, or by authority of one who did not give such authority, is guilty of a Class C felony:

    (a)   A writing or object whereby legal rights or obligations are created, terminated or transferred, or any writing commonly relied upon in business or commercial transactions as evidence of debt or property rights;

    . . . .

    (2)   Whoever utters as genuine or possesses with intent to utter as false or as genuine any forged writing or object mentioned in sub. (1), knowing it to have been thus falsely made or altered, is guilty of a Class C felony.

violation of § 943.38(2), STATS., alleging that Perry committed the offenses on April 15, May 4, and June 15, 1995. Perry waived his right to a preliminary hearing, and the State filed an information containing the original three charges. The trial court later permitted the State to amend the information to add two additional charges for violations of § 943.38(2), alleged to have been committed on April 10 and June 5, 1995. The additional counts involved the same type of instrument, drawn on the same financial institution, and in the same amount as charged in each of the first three counts. When asked by the court for his "position on whether or not the State can amend an Information to add related charges," Perry, who represented himself in the trial court proceedings, responded, "I stand mute."

Perry waived a jury trial, and the five charges were tried to the court. At trial, the State produced evidence that Perry had cashed "Transchecks" issued by EFS National Bank of Memphis, Tennessee, at five Madison-area financial institutions. An officer of EFS National Bank testified at trial that many trucking companies maintain accounts with EFS and issue blank Transchecks to their drivers. The Transchecks are generally used by the truck drivers to cover business-related expenses while on the road. Each contains blank boxes which require an "issuer number," a "transaction number" and an "authorization number" to be written in before the instrument may be cashed. Each check also bears the following message on its face, followed by an 800 number and a local Memphis telephone number:

**DO NOT CASH WITHOUT CALLING**

This draft is not valid and will not be honored without obtaining an authorization number before cashing. To obtain a number key the transaction in the EFS data terminal or call one of the following numbers.

The bank officer described the typical use of a Transcheck as follows. When a trucker needs cash for an emergency repair or other unanticipated expense while on the road, he or she calls the trucking company and requests a specific amount to cover the expense. The company, in turn, gives the truck driver the issuer and transaction numbers for the Transcheck, and contacts EFS to arrange a check authorization in a specific amount for the identified transaction number. Subsequently, when a call is made to activate the check, EFS authorizes payment for the pre-arranged amount and provides an authorization number. The bank officer also testified that a trucking company could obtain an authorization number in advance from EFS, and if that number was correctly entered on the Transcheck, EFS would honor it even if no authorization call was made at the time the check was cashed. Each of the checks which Perry was convicted of uttering bore improper issuer, transaction and authorization numbers, and EFS refused to honor them.

The trial court admitted the Transchecks into evidence over Perry's objection that, since they were not negotiable instruments as defined by the Uniform Commercial Code, they were not covered by the prohibitions under § 943.38, STATS. The State's remaining evidence consisted of testimony from employees of the financial institutions which cashed the Transchecks for Perry. Their testimony, generally,

was that Perry had come into each institution and made some contact with personnel in the "personal banking" or new accounts area of the institution, sometimes indicating that he wished to open an interest-bearing account for a son who was in the military. Perry would then approach a teller with a Transcheck containing all necessary number boxes filled in, stating that a personal banker had received authorization and approved cashing the check. The tellers then cashed the Transchecks without calling EFS, since they assumed that had already been done.

The trial court found Perry guilty of the original three charges and one of the two added counts. The remaining count was dismissed by the court. He was sentenced on June 14, 1996, to a total of twenty-years imprisonment on the four convictions, and the court ordered that he pay statutory court costs totaling $300. A judgment of conviction containing those terms was entered on June 19, 1996. The court also ordered at sentencing that Perry pay restitution to the victims of his forgeries and directed the State to submit a proposed restitution order, which would be entered unless Perry objected to the amount of restitution sought by the State.

The State submitted a proposed order for restitution in the amount of $1,750 to each of the four victims of Perry's forgeries, and the sum of $1,235 to the Dane County Sheriff's Department for its costs in returning Perry to Dane County from Texas. The State clarified at the restitution hearing that it was seeking reimbursement for the extradition expenses as "costs" under § 973.06(1)(a), STATS., and that the amount requested was "not the subject of this hearing." Accordingly, prior to taking testimony on the restitution issues, the court ordered as follows:

[P]ursuant to Section 973.06(1)(a), I am specifically ordering as part of the judgment of conviction that Mr. Perry pay costs for the cost of extradition in the amount of $1,265.00.[sic]

The court subsequently entered an "Amended Order for Restitution" on August 29, 1996, which directs Perry to pay a total of $7,000 in restitution to the victims and $1,235 in extradition costs.

Although Perry's notice of appeal cites only "the judgment of conviction and sentence entered on June 19, 1996," he claims error in the August 29, 1996, restitution order as well, insofar as that order imposed the $1,235 in extradition costs. The August 29th order contains the statement "(Attach to the Judgment of Conviction)." We accept Perry's appeal as bringing before us both the June 19th judgment and the August 29th order.

## ANALYSIS

*a. Amendment of Information to Include Additional Charges*

The State argues that, because he did not object to the amendment of the information in the trial court, Perry has forfeited the opportunity for appellate review of his claim that two additional charges were improperly included in the amended information. We agree. The well-settled rule in Wisconsin is that " '[f]ailure to object to an error at trial generally precludes a defendant from raising the issue on appeal.' " *State v. (Kenneth) Davis*, 199 Wis. 2d 513, 517, 545 N.W.2d 244, 245 (Ct. App. 1996) (quoted source omitted).

Perry urges us to reject the State's forfeiture argument because: the State has the burden of

establishing the transactional relationship between the added charges and the original ones; appellate review of the issue will not unfairly prejudice the State; and Perry proceeded pro se in the trial court. We note, however, that the trial court did not simply accept the State's proffered amendments to the information, but required it to provide authority and argument that the inclusion of the additional charges was proper. Furthermore, a reversal of Perry's conviction on the added count at this time would require the State to retry him on that count more than two years after the events in question, obviously at some expense and effort, but more problematically, with a greater risk that witnesses' recollections of their dealings with Perry will have dimmed.

■ The trial court specifically gave Perry an opportunity to articulate any objections to inclusion of the added charges, but he chose to "stand mute." While he cites his pro se status in the trial court as a policy reason why we should not invoke the forfeiture rule, Perry does not argue that the trial court erred in accepting his waivers of the right to counsel or in permitting him to proceed pro se. Indeed, our review of the record indicates Perry was quite able to articulate proper objections, several of which were granted. In short, we see no policy reasons present in this case that would outweigh those supporting the forfeiture rule, especially the policy of encouraging parties to view trial court proceedings as "event[s] of significance that should be kept as error-free as possible." *(Kenneth) Davis*, 199 Wis. 2d at 518, 545 N.W.2d at 246.

b. *"Transchecks" as Writings Included within § 943.38(1)(a), STATS.*

In order to convict Perry of violating § 943.38(2), STATS., the State's burden was to prove beyond a reasonable doubt that the writings he presented for payment were ones by which legal rights or obligations are created or transferred; that the writings were falsely made; that Perry uttered the writings as genuine; and that Perry knew the writings were falsely made. Section 943.38(1) and (2); *see Johnson v. State*, 53 Wis. 2d 787, 791, 193 N.W.2d 659, 661 (1972); *and see* WIS J I—CRIMINAL, NO. 1492. Perry concedes that the evidence presented at trial was sufficient for the trial court to find that, on four separate occasions, he presented as genuine EFS Transchecks for payment and received $1,750 in cash; that the Transchecks were falsely made, in that they bore invalid account and authorization numbers; and that, inferentially, Perry was aware of the falsity of the Transchecks at the time he presented them for payment.

Perry claims, however, that the State's evidence was insufficient to establish that the writings he uttered were included within § 943.38(1)(a), STATS., in that they were not shown to be writings "whereby legal rights or obligations are created, terminated or transferred." He argues that, since their validity was expressly conditioned on the authorization requirements set forth on the face of the checks, the Transchecks were not negotiable instruments under § 403.104(1), STATS.,[2] because they were not "unconditional" promises or orders to pay. Since the

[2] Section 403.104(1), STATS., defines a "negotiable instrument" as "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order," so long as other specified requirements are met.

Transchecks were "worthless" absent compliance with the authorization requirements, Perry argues that they could not create, terminate or transfer any legal rights, and were not to be relied upon in business or commercial transactions. He asserts that while he may perhaps be guilty of theft by fraud, "a bank's negligent cashing of these documents does not transform the Transchecks into the type of writing subject to the forgery statute[, § 943.38]."

Perry's claim of error nominally attacks the sufficiency of the evidence to support the trial court's finding of guilt. He acknowledges, however, that he is actually challenging the trial court's interpretation of a statute and its application to facts which are largely undisputed. His claim, therefore, raises a question of law which we review de novo. *Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773, 778 (1989). The State contends, however, that only a limited part of our review involves the de novo interpretation of § 943.38(1)(a), STATS. The State asserts that in considering whether an element of the crime was proven, we must defer to the trial court as fact-finder unless the evidence, viewed most favorably to the State, would not permit a finding of guilt beyond a reasonable doubt. *See State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752, 755 (1990).

The State's position on the scope of our review finds some support in the pattern jury instructions.[3] In its comments regarding WIS J I—CRIMINAL 1492, the instructions committee states that "[w]hether a

---

[3] "[W]hile we generally view the work of the Criminal Jury Instructions Committee as persuasive, it is not precedent." *State v. O'Neil*, 141 Wis. 2d 535, 541 n.1, 416 N.W.2d 77, 80 (Ct. App. 1987).

particular writing or object is one by which 'legal rights or obligations are created or transferred' is a question of fact for the jury to determine." *See* WIS J I—CRIMINAL 1492, n.2. We have no difficulty accepting the trial court's finding, based on the testimony of the EFS bank officer, that "a transcheck which has not been forged will be accepted by various financial institutions and will be cashed by them." Nonetheless, we interpret the essence of Perry's argument to be that, as a matter of law, Transchecks fall outside the definition set forth in § 943.38(1)(a), STATS., and therefore, the forgery charges against him should have been dismissed. As we have noted above, this inquiry requires us to interpret the statute independently of the trial court.

While we accept Perry's characterization of the scope of our review, we reject the conclusion he would have us reach thereby. It is true, as Perry asserts, that when a criminal statute is ambiguous, we must construe it in the defendant's favor, pursuant to the so-called "rule of lenity." *State v. Frey,* 178 Wis. 2d 729, 745, 505 N.W.2d 786, 792 (Ct. App. 1993). He does not argue, however, that § 943.38(1)(a), STATS., is ambiguous, or that the legislature did not intend to bring writings such as the Transchecks in this case within the forgery statute. Rather, his argument is that, under the plain wording of the statute, Transchecks are not covered because the statute penalizes only "the misuse of a class of documents reasonably relied upon in business and commercial transactions, not the use of any writing that happens to be employed in a fraudulent scheme." Perry asserts that the financial institutions that cashed Perry's forged Transchecks were victims of their own negligence or ignorance, rather than victims of forgery, because the documents on their face required the

approval or authorization of EFS before they could be relied upon to create or transfer a legal obligation.

This court has previously determined that a writing need not qualify as a "negotiable instrument" under § 403.104(1), STATS., to be within the reach of the forgery statute. *State v. Machon*, 112 Wis. 2d 47, 50, 331 N.W.2d 665, 667 (Ct. App. 1983). The forged writings in *Machon* were payroll checks that did not bear a maker's signature. *Id.* at 48–49, 331 N.W.2d at 666. The defendant in *Machon* argued that he could not be convicted of forgery because the payroll checks in question were "invalid on [their] face." *Id.* at 50, 331 N.W.2d at 666. And, while that defendant could have also argued, as Perry does here, that his victims were negligent or ignorant in accepting checks that were invalid on their face, we concluded that, even though the checks were non-negotiable, endorsements on them constituted "writing[s] by which legal rights or obligations are created or transferred." *Id.* at 51, 331 N.W.2d at 667.

We have also considered a similar attempted forgery defense from a defendant who had collected money for magazine subscriptions and had issued the "customers" receipts on order forms prepared by his former employer. *State v. (Alvin) Davis*, 105 Wis. 2d 690, 314 N.W.2d 907 (Ct. App. 1981). We concluded that "[h]ad the writing been genuine, it would have created a legal obligation," *id.* at 694, 314 N.W.2d at 909, and that because receipts are "document[s] 'relied upon in commercial activity as evidence of a debt or property right,'" they were included within § 943.38, STATS. *Id.* at 696, 314 N.W.2d at 910. Here, had the Transchecks presented for payment by Perry contained

authentic identification and authorization numbers, they would have been honored by EFS National Bank.

Perry's violation of § 943.38(2), STATS., was complete when he presented the falsely made Transchecks to the tellers for payment, with the representation that they were genuine, knowing otherwise when he did so. *See Little v. State*, 85 Wis. 2d 558, 561, 271 N.W.2d 105, 108 (1978). It is immaterial whether tellers or other bank officials did or did not call EFS for authorization of the checks. Had they done so and been denied authorization, and had the tellers thus refused to release funds to Perry, he could still be successfully prosecuted for uttering the instruments. *Id.* at 564, 271 N.W.2d at 109. In fact, mere possession of forged instruments "with intent to utter" is also proscribed, and thus money or property need not actually be obtained in exchange for forged writings for there to be a conviction under § 943.38(2). *See id.* at 563–64, 271 N.W.2d at 109.

We conclude, therefore, that the conduct of the victims when the instruments were presented to them for payment is irrelevant to a determination of the nature of the writings. Whether it was reasonable for tellers to pay out cash on the Transchecks without calling EFS for authorization, or whether that constituted negligence, does not alter the fact that had the instruments been genuine instead of forgeries, EFS would have been legally obligated to pay on them, and would have done so. Thus, we conclude that the Transchecks uttered by Perry were writings "whereby legal rights or obligations are created, terminated or transferred" within the meaning of § 943.38(1)(a), STATS. That the Transchecks may not necessarily be

710

"negotiable instruments" within the meaning of the Uniform Commercial Code is irrelevant to Perry's prosecution and conviction under § 943.38(2). Equally irrelevant is whether Perry's victims were negligent for failing to call EFS for payment authorizations after he had presented the checks to them for payment.

    *c.   Imposition   of   Extradition   Costs   after Sentencing*

■

    The parties agree that extradition expenses are costs under § 973.06, STATS., not restitution. *See State v. Schmaling*, 198 Wis. 2d 756, 761, 543 N.W.2d 555, 557 (Ct. App. 1995) (restitution to the county cannot be ordered where county was not "actual victim of crimes"). Costs which may be assessed against a defendant convicted of a crime include:

> [t]he necessary disbursements and fees of officers allowed by law and incurred in connection with the arrest, preliminary examination and trial of the defendant, including, in the discretion of the court, the fees and disbursements of the agent appointed to return a defendant from another state or country.

Section 973.06(1)(a). At the commencement of a restitution hearing on August 9, 1996, the trial court ordered Perry to pay to Dane County, as costs, the expenses of his extradition from Texas in the amount of $1,235. The issue he raises is the timing of the court's order, coming as it did almost two months after the court had sentenced Perry and entered a judgment of conviction.

We agree with Perry that the court lacked authority to impose these additional costs after Perry had been sentenced. *State v. Grant*, 168 Wis. 2d 682, 484 N.W.2d 370 (Ct. App. 1992). In *Grant*, we reversed an order, entered two months after a defendant had been sentenced, which required him to pay the county the costs of his legal representation. While state- or county-paid costs for legal counsel, like extradition costs, are expressly taxable under § 973.06(1), STATS., we concluded that these costs could not be taxed in an order subsequent to and "separate from the sentence." *Id.* at 685, 484 N.W.2d at 371.

The State argues that the August 9, 1996, restitution hearing was simply "a timely continuation of the sentencing hearing," but the record proves otherwise. Perry was sentenced to prison and ordered to pay $300 in court costs on June 14, 1996, and a judgment of conviction containing those terms was entered on June 19, 1996. During the June 14th sentencing hearing, the court granted the State's request for restitution but left the amount open, instead ordering the State to submit a proposed restitution order within forty-five days. The court indicated that it would enter the order for the amount requested unless Perry objected. There is no indication in the record of the sentencing hearing that Perry's sentencing was continued for any purpose. Had the State not filed a proposed restitution order, or had Perry not objected to it, no further court proceedings would have ensued.

The State did subsequently submit a proposed order for restitution in the amount of $1,750 to each victim. The order also included a proposed payment of $1,235 to the Dane County Sheriff's Department for

extradition costs. Perry objected to the proposed order, and the matter was set for hearing. At the commencement of the August 9th court proceeding, the court announced that it was a "restitution hearing, this is a statutory procedure set forth in Section 973.20." Thus, it is clear that on August 9th, the trial court had convened to determine an appropriate amount of restitution, not for the purpose of a continued sentencing hearing.

The State next argues that Perry forfeited his right to object to the taxation of the extradition costs on appeal. After the State clarified at the August 9, 1996, hearing, that it was seeking payment of the extradition expenses as a "cost" and not as "restitution," Perry was asked if he had any response, and he answered, "None whatsoever." Perry's lack of response to the State's redesignation of its request for payment of extradition expenses, however, was not a failure on his part to object to the imposition of those costs. To the contrary, Perry clearly and consistently objected on constitutional grounds to the court's imposition of any payment obligations after sentencing had been completed. While he has abandoned on appeal his objection to the restitution ordered, he properly preserved his right to appeal the post-sentencing imposition of financial obligations. (Since we have concluded that the court lacked statutory authority to impose the extradition costs after sentencing, we do not reach Perry's constitutional arguments regarding this issue.)

Finally, the State claims that, because § 973.20(12)(a), STATS., requires a court, if restitution is ordered, to "issue a single order, signed by the judge, covering all of the payments" (for fines, assessments,

costs and restitution), costs can therefore be newly imposed at a restitution hearing and included in the omnibus order. The State's argument is at best strained. Under the State's logic, a court could also decide at a restitution hearing under § 973.20(13)(c), to tack on thousands of dollars in fines to a previously imposed felony sentence simply because "fines" are also mentioned in § 973.20(12)(a). We agree with Perry that the direction to issue a "single order" covering all financial obligations of the defendant after the amount of restitution is finally determined, is solely intended for the administrative convenience of corrections personnel and clerks of court, who must collect and receive the payments and credit them properly. The statute does not authorize the court to "hold open" all financial terms of a previously imposed sentence while restitution is being determined.

Section 973.20(13)(c), STATS., specifically authorizes a court to "[a]djourn the sentencing proceeding for up to 60 days pending resolution of the amount of restitution," but for no other purpose. Our decision today in no way jeopardizes the circuit court's authority to handle actual or potential disputes over the amount of restitution in the manner which the trial court did here, or in one of the other ways authorized under § 973.20(13)(c). We agree with the State that handling disputes over restitution in this fashion promotes judicial economy. A court may not, however, impose after sentencing costs under § 973.06, STATS., that were not ordered during the sentencing proceedings, simply because the determination of the amount of restitution is deferred as permitted by statute.[4]

---

[4] Whether the court could have ordered Perry to pay the extradition costs at the time of sentencing, subject only to a

## CONCLUSION

We reject Perry's claim that the writings he uttered were beyond the reach of the forgery statute, § 943.38, STATS. He forfeited his right to object on appeal to the inclusion of additional charges in the amended information by not objecting in the trial court. His judgment of conviction is therefore affirmed. Because the trial court lacked authority to impose additional costs under § 973.06, STATS., after Perry had been sentenced, we reverse the Amended Restitution Order, dated August 27, 1996, and entered August 29, 1996. On remand, a restitution order should be entered which includes only the $7,000 ordered to be paid as restitution to the four victims of Perry's crimes.

*By the Court.*—Judgment affirmed; order reversed and cause remanded with directions.

---

subsequent verification of the amount of those costs, is not before us. Here, the extradition costs were clearly an afterthought on the part of the State, having been first requested when the State filed its proposed restitution order several weeks after sentencing.