STATE of Wisconsin, Plaintiff-Respondent,

v.

Dennis Charles SCHULPIUS, Defendant-Appellant.†

Court of Appeals

*No. 2006AP283–CR. Submitted on briefs November 7, 2006.*
*—Decided November 28, 2006.*

## 2006 WI App 263

(Also reported in 726 N.W.2d 706.)

† Petition to review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Bridget E. Boyle* of *Boyle, Boyle & Boyle, S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general by *Gregory M. Weber*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. FINE, J.   Dennis Charles Schulpius appeals the judgment convicting him of using a computer to facilitate a child sex-crime. *See* Wis. Stat. § 948.075. He contends that the State did not satisfy § 948.075(3) by establishing his intent to have sex or sexual contact with the person whom he believed to be less than sixteen years old by proving that he did something "other than use a computerized communication system to communicate with" that person that showed such intent. We disagree and affirm.

## I.

¶ 2.   This appeal arises out of a sting operation, where Schulpius believed that he was having computer conversations with a fourteen-year-old girl. In reality, the girl was a City of Milwaukee detective posing as "Meghan." The case was tried to the court on a stipulation of facts.

¶ 3. The statute, as it existed when Schulpius communicated over the internet with "Meghan," provided:

**(1)** Whoever uses a computerized communication system to communicate with an individual who the actor believes or has reason to believe has not attained the age of 16 years with intent to have sexual contact or sexual intercourse with the individual in violation of s. 948.02 (1) or (2) is guilty of a Class D felony.

**(2)** This section does not apply if, at the time of the communication, the actor reasonably believed that the age of the person to whom the communication was sent was no more than 24 months less than the age of the actor.

**(3)** Proof that the actor did an act, other than use a computerized communication system to communicate with the individual, to effect the actor's intent under sub. (1) shall be necessary to prove that intent.

WIS. STAT. § 948.075 (2003–04).[1]

¶ 4. As material here, Schulpius admitted to communicating with "Meghan" over the internet thirty-four times between May 29, 2004, and July 19, 2004, when he was arrested, and he does not dispute that he sent to "Meghan" over the internet what the stipulation describes as "a photo of a nude adult male with his hand on his erect penis," telling "Meghan" that it was a picture of him. He also does not dispute that from the very first of his internet discussions with "Meghan," and throughout their internet conversations, he told her that he wanted them to have sex. Indeed, during the first internet conversation Schulpius discussed meeting

---

[1] Effective June 6, 2006, WIS. STAT. § 948.075(1) became § 948.075(1r) and the felony level was changed from "Class D" to "Class C. " 2005 Wis. Act 433, § 22.

with "Meghan" so she could perform oral sex on him, and this was a recurring theme in their internet discussions until he was arrested. Further, when she told him that she was in the eighth grade, his immediate response was that she could "be my secret blowjob queen." During the course of their internet conversations he frequently referred to her as his "blowjob queen." He also discussed having vaginal sex with her, and this, too, was a recurring theme in their internet conversations. Further, he tried to get "Meghan" to have another fourteen-year-old girl join them for sex.

¶ 5. Although they discussed meeting during their internet conversations, the stipulation indicates that Schulpius and "Meghan" never met, and that "[t]here were several suggestions of a time for a meeting, but none that were confirmed or acted upon by the parties." Schulpius admits, however, that he told "Meghan" that he drove to the neighborhood where "Meghan" said she lived, and, as phrased by the stipulation, "to the payphones where ["Meghan"] claimed she would call [Schulpius] from." The stipulation, describing an internet conversation on July 6, 2004, further explained:

> He describes the payphones – "3 payphones with yellow handles on them..by the bus stop . . .I was looking for you.. they were over by the Walgreens." The defendant also stated that he drove there with his pants down looking for ["Meghan"]. He stated that he drove past the telephones 4 times and that he became "pissed" because she wasn't there. The defendant also claimed to have bought condoms the day after ["Meghan"] was supposed to have called because he was hoping to hook up after that. The defendant claimed that the condoms were still in his car.

(Punctuation as in original printout.) In the internet

conversation referred to in part of the stipulation just quoted, Schulpius told "Meghan," as reflected by the printout, that he was disappointed that she did not call him from a payphone as she told him she would:

| | |
|---|---|
| [Schulpius] 06:44 PM: | and u said u were gonan call from a payphoen and i waiited and u never did |
| [Schulpius] 06:45 PM: | then i drove over to those phones on 27th and national and u were no wheres around |
| . . . . | |
| [Schulpius] 06:45 PM: | i drove over there with my pants down lookign for you |
| ["Meghan"] 06:46 PM: | **no way. that's so kewl!!!** |
| [Schulpius] 06:46 PM: | yeah theres like 3 payphone with yellow handles on them |
| [Schulpius] 06:46 PM: | by the bus stop |
| [Schulpius] 06:46 PM: | i was lookin for you .. they were over by walgreens |
| . . . . | |
| [Schulpius] 07:14 PM: | are those the phones you were gonan use |
| ["Meghan"] 07:15 PM: | on 27th and national |
| [Schulpius] 07:16 PM: | yeah the phones by the bus stop |
| [Schulpius] 07:16 PM: | with the yellow handles |

160

["Meghan"] 07:16PM:      yep

[Schulpius] 07:16 PM:      yeah i drove right past there
                          4 times

(Punctuation, spelling, and bolding as in original print-out.)

¶ 6.    The internet conversation about the condoms referred to in the stipulation was on July 16, 2004, and Schulpius told "Meghan" that he was driving around her area on Wednesday, July 7, and that "2 weaks ago i bought condems incase u wanted to fuck." "Meghan" replied, "did u really?? just 4 me??," and Schulpius answers, "yes!!" (Punctuation and spelling as in original printout.)

¶ 7.    A police report in evidence indicates that when interrogated after his arrest, Schulpius "admitted to the online chats" with "Meghan," and "admitted to going to the area of 27th and National sometime about 2 to 3 weeks ago, to check out the area to tell ["Meghan"] that he had been over by her neighborhood and that way he would get her interested in chatting with him again."

¶ 8.    According to the stipulation, "[u]nused condoms were recovered from the defendant's car" after he was arrested at his home. Schulpius submitted an affidavit in which he averred that if he "would testify at a trial," he would say that he was in the area that the stipulation refers to as the area where he thought "Meghan" lived for the wholly innocuous reason of going to a family party at his girlfriend's house and "to stop and pick-up [sic] some alcohol for this party." He also averred: "That this is the only reason that this affiant was in that area on that date. He was only in that area in [sic] his way to his girlfriend's house and for no other

161

purpose." He concluded the affidavit, however, by saying that it "is made upon information and belief."

¶ 9.   Although admitting on this appeal that "[h]is conversations with ["Meghan"] might be considered disgusting and vial" [*sic*], he contends that the facts do not satisfy the requirement in Wis. Stat. § 948.075(3). The trial court disagreed, pointing to the extensive discussions Schulpius had with "Meghan" about his driving around in her area looking for her.

## II.

¶ 10.   As noted, Schulpius does not dispute that he was properly convicted if there is evidence satisfying Wis. Stat. § 948.075(3). The subsection has two elements:   (1) the defendant must have done something that shows that he or she had, as phrased by § 948.075(1), the "intent to have sexual contact or sexual intercourse" with someone whom he or she believed, or had reason to believe, was younger than sixteen, and (2) that act must be something "other than use a computerized communication system to communicate with" that person. Although Schulpius seeks a *de novo* review, pointing to *State v. Perry*, 215 Wis. 2d 696, 573 N.W.2d 876 (Ct. App. 1997), we see this as a standard sufficiency-of-the-evidence case governed by *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752, 755 (1990).

■

¶ 11.   When reviewing the sufficiency of the evidence, we will reverse a conviction only if "the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable

doubt." *Ibid.* Thus, an appellate court must "search the record to support the conclusion reached by the fact finder." *State v. Owen*, 202 Wis. 2d 620, 634, 551 N.W.2d 50, 56 (Ct. App. 1996). The *Poellinger* rule applies to court trials. *State v. Lindgren*, 2004 WI App 159, ¶ 24, 275 Wis. 2d 851, 864–865, 687 N.W.2d 60, 66.

■

¶ 12.  *Perry*, upon which Schulpius relies for his contention that we must apply a *de novo* standard of review, involved a case where the facts were essentially undisputed and the challenge was to the trial court's interpretation of the statute. *Perry*, 215 Wis. 2d at 707, 573 N.W.2d at 880–881. Here, unlike the situation in *Perry*, the statute is clear, and Schulpius does not argue that it is not. The dispute, rather, focuses on Schulpius's contention that he did not do anything that showed that he intended to have sex with "Meghan" other than what he characterizes as his "disgusting and vial" [*sic*] computerized communications with her. This presents quintessential fact-issues that are within the standard of review recognized by *Poellinger*.

■

¶ 13.  In finding that the State had satisfied its burden under WIS. STAT. § 948.075(3), the trial court assessed Schulpius's "on information and belief" affidavit that he was in "Meghan"'s neighborhood for an innocent purpose that had nothing to do with his communications with her. But the trial court also properly looked at the communications themselves, where Schulpius, as we have seen, told "Meghan" that he drove through her neighborhood for the specific purpose of meeting her. This and Schulpius's confession to the police that he went to the area so he could, as phrased by the police report (a phrasing that Schulpius does not contest), "get her interested in chatting with

him again," shows that the non-computer-assisted act of driving through the area was "to effect" his "intent" to have sex with the girl he knew as "Meghan," and thus satisfied the requirement in § 948.075(3). Further, although not mentioned by the trial court in its oral decision finding Schulpius guilty, a fair and reasonable inference from the Record is that Schulpius purchased the condoms to use, as he told "Meghan" during one of their internet conversations, in case she wanted to have sex with him. *See Owen*, 202 Wis. 2d at 634, 551 N.W.2d at 56 (appellate court must "search the record to support the conclusion reached by the fact finder"). The purchase of the condoms, too, satisfies the "other act" requirement of § 948.075(3). Thus, Schulpius's contention on appeal that "there was absolutely no proof to show that he did an act in furtherance to carry out the sexual conduct" with "Meghan" borders on the frivolous. We affirm.

*By the Court.*—Judgment affirmed.