SHIRLEY S. ABRAHAMSON, C.J.
¶ 1. This is a review of an unpublished decision of the court of appeals that affirmed the judgment of conviction entered by the Circuit Court for Milwaukee County, Jeffrey A. Conen, Judge.[1]
¶ 2. Gregory M. Sahs, the defendant, was convicted of possession of child pornography in violation of Wis. Stat. § 948.12(lm) (2007-08).[2]
¶ 3. The charge of possessing child pornography arose from incriminating admissions the defendant made to his probation agent. The defendant was on probation as a result of a prior conviction for possession of child pornography. After the defendant made incriminating statements to his probation agent, the police were alerted and found the computer the defendant used to *645 access and possess child pornography, leading to a revocation of his probation and these additional criminal charges.
¶ 4. After being criminally charged, the defendant moved the circuit court to suppress the admissions to his probation agent, claiming that they were compelled, testimonial, and incriminating in violation of his state and federal constitutional privilege against self-incrimination. The Fifth Amendment to the United States Constitution[3] and Article I, Section 8 of the Wisconsin Constitution[4] provide that no person shall be compelled in any criminal case to be a witness against himself.
¶ 5. The defendant's admissions are clearly testimonial and incriminating. The issue is whether the admissions were compelled.
¶ 6. The legal issue before this court is the same as the legal issue before the circuit court and court of appeals: Should the incriminating statements made
by the defendant to his probation agent admitting possession of child pornography be suppressed on the ground that the statements were compelled in violation of the defendant's federal constitutional privilege against self-incrimination?[5]
*646 ¶ 7. The court of appeals concluded that the circuit court properly denied the motions to suppress: "[T]he evidence that Sahs relies upon [namely a Department of Corrections document] does not appear in the record" and "the facts in the record are insufficient to show compulsion."[6]
¶ 8. We affirm the decision of the court of appeals.
¶ 9. The defendant has failed to meet his burden to prove that his initial, oral statements were compelled.[7] Neither the circuit court nor this court can consider the Department of Corrections form that the defendant claims advised him that his incriminating statements cannot be used against him in criminal proceedings. The form is not in the record. The parties did not agree about its existence, the details of its use, or the defendant's knowledge of its contents before the defendant made his oral admissions.
*647 ¶ 10. The defendant has failed to put sufficient evidence into the record to show that the rules of his probation rendered his incriminating statements compelled. No documents, no testimony, and no undisputed, agreed-upon facts by the parties are in the record to evidence any compulsion of the defendant to admit possession of child pornography to his probation agent.
¶ 11. Because there is not sufficient evidence in the record to show compulsion, we affirm the decision of the court of appeals, which affirmed the circuit court's order denying suppression of the statements and the judgment of conviction.[8]
I
¶ 12. We first turn to the facts. The Complaint charging the defendant with two counts of possession of child pornography was filed on July 2, 2008. The defendant waived a preliminary hearing. The State filed the information based on the complaint. The defendant entered a plea of not guilty to the two counts charged.
¶ 13. The defendant then filed his motion seeking to suppress the statements he made to his probation agent. The State opposed the motion. The circuit court requested that the parties participate in an evidentiary hearing regarding the suppression motion. Instead, both parties proffered facts in written briefs to the circuit court and stipulated that the circuit court could decide the case based on the factual representations set forth in the briefs.
*648 ¶ 14. The facts set forth here are therefore predominantly taken from the parties' briefs filed in the circuit court. The circuit court explained that it was "dealing with representations here and not a factual record by affidavit."[9]
¶ 15. As one might suspect from the proceedings we have described thus far, the record in this case relating to the suppression motion is extremely thin. What follows are the parties' undisputed, agreed-upon facts we have culled from the parties' briefs and the findings of fact the circuit court made.
¶ 16. The parties agree that the defendant was sentenced to probation in 2005 arising from a conviction for possession of child pornography.
¶ 17. The parties agree that Department of Corrections Probation/Parole Agent Michael Krause was assigned to supervise the defendant's probation and that the defendant was required to participate in sex offender group therapy as a condition of his probation.[10] The other conditions of the defendant's probation are not in the record.
¶ 18. The parties finally agree that the defendant was on probation when, in January 2007, he made statements to Agent Krause indicating that he again possessed child pornography. From there, the parties' factual assertions diverge.
*649 ¶ 19. The defendant asserts that he was required to take a polygraph test as a condition of sex offender treatment and that he failed this polygraph test on December 15, 2006,[11] when he untruthfully answered that he had not broken any of his probation rules.
¶ 20. The State, in contrast, contends that the polygraph test was administered because the defendant had "refused to participate in a meaningful way in his group therapy sessions." The focus of the polygraph test was on the defendant's prior sexual history. In his pre-polygraph examination interview, the defendant admitted that he had not been truthful about this history previously; the polygraph test then focused on whether the defendant had been truthful in the prepolygraph exam interview. The result of the polygraph test was that the defendant was truthful.
¶ 21. The parties agree that the defendant was terminated from his group therapy sessions. But, the parties dispute the reason for termination. The defendant believes he was terminated because he failed the polygraph test. The State asserts that the defendant was terminated because the information that he provided about his prior sexual history to the polygraph examiner in a pre-test interview should have been disclosed during his previous group therapy sessions.
¶ 22. The parties agree that the defendant was given an opportunity to regain admittance to group *650 therapy. They do not agree on the conditions he had to meet for re-admittance or whether he was re-admitted.
¶ 23. The defendant asserts that he was required to take another polygraph test, which was scheduled for January 13, 2007.[12] The State asserts that the defendant was required only to write a letter of full disclosure regarding his prior sexual history and that when he completed the letter, he was allowed back into therapy. The State asserts that the defendant had already been allowed back into his group therapy when he and Agent Krause met on January 12, 2007, and that Agent Krause had no intention of initiating revocation proceedings against the defendant, at that time, for his probation violations.
¶ 24. The State's brief sets forth Agent Krause's recollection about the events of January 2007. The State asserts that in January 2007, Agent Krause received a phone call from the defendant, who wanted to come in to talk "about some things." According to Agent Krause, he and the defendant agreed upon a mutually acceptable date, which was January 12, 2007.
¶ 25. The date of the meeting (Jan. 12) was the day before the date the defendant claims that he was required to take a polygraph examination (Jan. 13) in order to get back into therapy. The State makes no mention of this second polygraph test.
¶ 26. The parties agree that at the January 12, 2007 meeting, the defendant orally told Agent Krause that he had violated the rules of his probation by using a computer he kept at a friend's house to access child *651 pornography. According to Agent Krause, the defendant volunteered that he had been violating the rules of his probation.
¶ 27. According to the defendant and Agent Krause, Agent Krause wrote down the defendant's statements on a Department of Corrections form, which the defendant signed. The defendant asserts that this Department form included a notification and a box checked off next to the following statement:
I have been advised that I must account in a true and accurate manner for my whereabouts and activities, and that failure to do so is a violation for which I could be revoked. I have also been advised that none of this information can be used against me in criminal proceedings.[13]
¶ 28. The defendant does not state, either in the brief he filed in this court or in the motion he filed in the circuit court, when he was first advised that his statements could not be used against him in a criminal proceeding or whether he saw the form before he gave the oral statements.
¶ 29. The State agrees that Agent Krause wrote down the defendant's statement on a Department form but neither denies nor concedes the existence of the Department form or the notification that the defendant described. The State's brief in this court asserts that it never conceded or stipulated that the defendant was aware of the written notification when he gave his earlier, oral statements. The State's position here is that the defendant did not proffer any evidence to support his *652 assertion that he was aware of the written notification of immunity when he gave his earlier, oral statements.[14]
¶ 30. The parties agree that after the defendant made the incriminating statements, Agent Krause took the defendant into custody and initiated revocation proceedings.
¶ 31. There is no dispute about what happened thereafter.
¶ 32. Agent Krause notified the West Allis Police Department of the defendant's statements. The police arranged to retrieve the computer the defendant admitted to using.
¶ 33. Detective Jacque Chevremont of the West Allis Police Department met with the defendant twice while he was in custody at the Milwaukee Secure Detention Facility. Detective Chevremont read the defendant his Miranda warnings both times; the defendant stated he understood the warnings and that he was willing to speak with the Detective. The defendant admitted that while on probation, he downloaded child pornography on a computer that he kept at a friend's house.
¶ 34. In ruling on the suppression motions, the circuit court assumed that the defendant was advised of the standard conditions of probation, which include providing true and correct information when asked. Neither the conditions of probation imposed on the defendant nor any "standard conditions of probation" are in the record before this court.
*653 ¶ 35. The circuit court's findings of fact to be upheld as not clearly erroneous had to be based in the present case on the parties' agreed-upon, undisputed facts. The circuit court made the following factual findings:
• The defendant initiated the January 12, 2007 meeting with his probation agent.
• The defendant volunteered the information that he had been violating the probation rales by using a friend's computer to download images of child pornography.
¶ 36. With regard to the circuit court's first finding, the parties agreed that the defendant initiated the January 12, 2007 meeting with his probation agent.
¶ 37. With regard to the circuit court's second finding, the circuit court, relying on common sense, assumed that the probation agent would have asked the defendant some questions. Nevertheless, the circuit court found that the defendant volunteered that he had violated the rules of probation. The State asserted that the defendant volunteered that he had been violating the probation rules. The defendant did not characterize his statements as volunteered. Neither party made any representation to the circuit court about whether the defendant made any statement in response to questions.
¶ 38. The circuit court denied the defendant's motions to suppress, concluding that the facts were insufficient to show compulsion and that simply because an agent might revoke probation is not enough to establish compulsion.
¶ 39. After the circuit court denied the defendant's motions to suppress, the defendant changed his plea to guilty of one count of possession of child pornography pursuant to plea negotiations.
*654 II
¶ 40. Whether the defendant's statements to his probation agent were compelled in violation of his constitutional right against self-incrimination presents a question of constitutional fact. In reviewing issues of constitutional fact, first, we review the circuit court's findings of historical fact; we will uphold them unless they are clearly erroneous. Second, we determine the application of constitutional principles independently of the circuit court and court of appeals, benefitting from their analyses.[15]
¶ 41. A probationer has a Fifth Amendment privilege against compelled self-incrimination.[16] A critical issue is whether the probationer must claim the privilege or whether the situation gives rise to a self-executing privilege.
¶ 42. The United States Supreme Court has declared that an ordinary witness who is "merely required to appear and give testimony" must affirmatively claim the privilege.[17] "[I]n the ordinary case, if a witness under compulsion to testify makes disclosures instead of claiming the privilege, the government has not 'compelled' him to incriminate himself."[18]
*655 ¶ 43. However, the United States Supreme Court has also recognized exceptions to the general rule requiring a person to affirmatively assert his or her Fifth Amendment privilege. In some situations, the privilege is self-executing and thus need not be affirmatively invoked before the statement is deemed compelled.[19] One of these "self-executing situations" occurs when a probationer must answer questions that require him to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent.[20]
¶ 44. The United States Supreme Court has explained the difference between the ordinary witness who must claim the privilege when he is "merely required to appear and give testimony" and certain situations relating to a probationer whose privilege may be self-executing when he is required to answer incriminating questions. The Supreme Court has differentiated between the two as follows:
The threat of punishment for reliance on the privilege distinguishes cases of this sort [namely those involving a probationer] from the ordinary case in which a witness is merely required to appear and give testimony. A state may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self-executing privilege. The result may be different if questions put to the probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution. There is thus a substantial basis in our cases for *656 concluding that if the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution.[21]
Ill
¶ 45. The defendant asserts that his statements to his probation agent were compelled in violation of his federal constitutional privilege against self-incrimination for two reasons. First, he claims that he signed a Department of Corrections document that notified him that his failure to account truthfully about his activities is a violation for which his probation could be revoked and that "none of the information can be used against [him] in criminal proceedings." Second, he claims that his statements were compelled because he allegedly was required to report his activities truthfully to his probation agent and was required to take a mandatory polygraph test and knew that if he failed the polygraph test, his probation could be revoked.
¶ 46. We discuss each claim in turn.
A
¶ 47. We turn first to the defendant's claim of compulsion relying on the Department of Corrections form described above. This form, according to the defendant, advised the defendant that the statements he made to the probation agent were not to be used against him in a criminal proceeding.
*657 ¶ 48. The burden was on the defendant in the circuit court to prove that his statement to the probation agent was compelled and that use of the statement in this criminal proceeding violates the federal constitutional privilege against self-incrimination.
¶ 49. The circuit court and court of appeals ruled that the defendant did not meet his burden.
¶ 50. The Department of Corrections form upon which the defendant relies is not part of the circuit court record or part of the record before this court. The well-established rule is that appellate review is limited to the record presented.[22] The burden is on the appellant, here the defendant, to ensure that the record is sufficient to address issues raised on appeal.[23]
¶ 51. No undisputed, agreed-upon facts by the parties or other evidence appears in the record to prove that the defendant signed the form or that the defendant was informed or knew of the contents of the form before he gave oral incriminating statements to his probation agent.
¶ 52. The circuit court made no findings of fact regarding the existence of the Department form or the conversation that occurred between the defendant and Agent Krause when the form was allegedly completed and signed.
¶ 53. Because the Department form is not in the record and nothing about the execution of the form is in *658 the parties' undisputed, agreed-upon facts, the defendant's argument that the form immunized his statements fails.
B
¶ 54. We turn now to the defendant's claim that the statements to the probation agent were compelled by the threat of revocation of his conditional liberty. The defendant makes two arguments. He argues that the mere fact that he was required to appear and report truthfully to his probation agent is sufficient to establish compulsion. He also argues that the fact that he was required to take a polygraph test establishes compulsion.
1
¶ 55. The case law establishes that the mere requirement on a probationer to appear and speak "truthfully to his or her probation (or parole) officer is insufficient to establish compulsion."[24]
¶ 56. The seminal case regarding probationers and self-incrimination is Minnesota v. Murphy, 465 U.S. 420 (1984). The United States Supreme Court recognized that requiring Murphy, a probationer, to appear and answer questions truthfully was insufficient to establish compulsion.[25] The Court declared that if Murphy was in a situation that gave rise to a self-executing privilege against self-incrimination — such that "the State, either expressly or by implication, assert[ed] that *659 invocation of the privilege would lead to revocation of probation" — then "the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution,"[26] even though the privilege was not affirmatively invoked. See ¶¶ 41-44, supra.
¶ 57. As to Murphy, the Court concluded that the State of Minnesota did not go further than requiring Murphy to appear and give testimony. It did not "require [ ] him to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent."[27] The Court in Murphy concluded that there was no evidence in the record showing that the State would have revoked the probation or that the probationer (Murphy) believed his probation would have been revoked if he chose to remain silent.[28] Accordingly, Murphy did not prove his statement was compelled.
¶ 58. In the present case, there is no evidence that the State, either expressly or by implication, told the defendant that his refusal to speak to his probation agent or his invocation of his privilege against self-incrimination would lead to the revocation of his proba *660 tion. The defendant claims that he believed his probation would be revoked if he failed to tell his probation agent the truth, but there is no evidence in the record indicating that the defendant was informed of such potential revocation. The parties did not agree that revocation was a consequence or that the defendant believed his probation would have been revoked if he chose to remain silent.
¶ 59. Nothing in the record supports the defendant's claim that there was an explicit consequence of revocation for failing to tell the truth or that the defendant believed that probation would be revoked if he did not tell the truth. Thus, the probationer in the present case, like the probationer in Minnesota v. Murphy, has not proved his claim of compulsion.
2
¶ 60. The defendant appears to rest his claim of compulsion not only on the fact that the rules of probation required him to tell the truth, but also on the fact that he was required to take a polygraph test and that he knew that if he did not admit to his behavior it would be discovered the next day during his scheduled polygraph test. The defendant argues that on the basis of his past experiences, he made the incriminating statement knowing that if he did not give an accurate and truthful accounting of his behavior before the mandated polygraph test, he would be in violation of his probation rules and he would face revocation of his probation.
¶ 61. Again, the defendant has not carried his burden of proving compulsion. Nothing in the record supports the defendant's claim of compulsion regarding the polygraph test.
*661 ¶ 62. The defendant's original rules of supervision, which the defendant asserts require a polygraph test, are not in the record. The requirement of a polygraph test is not an undisputed fact.[29] Nothing appears in the record to support the defendant's assertion that he was required to take a polygraph test the day after he made his statements.
¶ 63. The circuit court could not and did not determine whether the defendant was required to take a mandatory polygraph test as a condition of his probation or that he had a mandatory polygraph test scheduled for January 13, 2007, which he knew he would fail. Nothing in the record describes the rules governing the polygraph test.
¶ 64. Without any evidence in the record, the defendant fails to demonstrate that his admission to the probation agent was compelled by his being required to take a polygraph test.
¶ 65. The fact that a probationer was required to take a polygraph test as a condition of probation played an important part in both State v. Peebles, 2010 WI App 156, 330 Wis. 2d 243, 792 N.W.2d 212, and State v. Spaeth, 2012 WI 95, 343 Wis. 2d 220, 819 N.W.2d 769, in the court's determining whether the probationers' statements were compelled.
¶ 66. The Peebles and Spaeth cases were decided after the circuit court's and court of appeals' decisions in the present case and did not guide these decisions.
¶ 67. In Peebles, the court of appeals was faced with determining whether a probationer's incriminat *662 ing statements were compelled.[30] Peebles was placed on probation after pleading no contest to sexual assault. The court ordered "Sex Counseling/register/be compliant with Sex Offender Program."[31]
¶ 68. Peebles subsequently met with his probation agent and signed the Rules of Community Supervision and the Standard Sex Offender Rules, which were entered into the record. The rules warned him that his probation could be revoked if he violated the rules.[32]
¶ 69. One requirement of Peebles' probation was that he take a polygraph test.[33] Peebles testified that he understood that if he did not follow the rules of supervision, including participating in sex offender treatment and cooperating with his treatment counselor, which required talking in treatment about his sexual behavior, he could face revocation from supervision or incarceration.[34]
¶ 70. Peebles' probation was ultimately revoked based on comments he made in sex offender counseling and to the polygraph examiner immediately before a polygraph examination.[35]
¶ 71. The court of appeals explained in Peebles that "a probationer's statements are compelled if he or she must choose between providing them or jeopardizing his or her conditional liberty by remaining silent."[36]
*663 ¶ 72. The court of appeals concluded that Peebles' statements were compelled because the rules of his supervision, which were in the record, required that he be truthful, that he submit to polygraph tests, and that he fully cooperate with and successfully complete sex offender counseling. Peebles "then gave his statements, at least in part, because he was required to take lie detector tests."[37]
¶ 73. In Spaeth, this court explained that the Peebles decision demonstrates how statements made to probation agents may be "compelled by way of probation rules." This court explained that based on Peebles' testimony about his subjective view of the consequences of failure to take a polygraph test, the court of appeals held that Peebles' statements were compelled.[38]
¶ 74. The record before the court in the present case does not support the same conclusion as did the record in Peebles. In the present case, the defendant's probation rules are not in the record. The parties did not reach undisputed, agreed-upon facts regarding the defendant's knowledge or belief that his probation would be revoked unless he told the truth.
¶ 75. In the present case, the court is unable to determine what the probation rules required and what the defendant believed would be the consequences of his failing to tell the truth. Thus, the court is unable to conclude, from the record, that the defendant's probation rules required him to be truthful, required him to submit to polygraph tests, or required revocation of probation if he violated the rules.
¶ 76. In Spaeth, the State and Spaeth stipulated that Spaeth's participation in a polygraph test while on *664 probation was compelled.[39] A condition of Spaeth's probation was a mandatory polygraph test at least once per year.[40] Spaeth was "required to take this examination, required to cooperate with the examiner, and required to answer questions truthfully. His failure to take the polygraph examination could have resulted in revocation of his probation. His failure to answer questions truthfully also could have resulted in a serious sanction."[41]
¶ 77. Before taking the polygraph test, Spaeth signed a "consent form" provided by the test administrator, but the form he signed was not, according to the court, an accurate statement of the law for this probationer because the form stated that his statement may be used against him at trial.[42] The court determined that his "failure to take the polygraph examination could have resulted in his revocation, and his refusal to sign the 'consent form' could have been deemed a refusal to take the polygraph examination. In addition, any statements that Spaeth made during the polygraph examination were subject to use and derivative use immunity and could not be used against him at a *665 criminal trial."[43] The probation agent "later testified that Spaeth was aware that the polygraph results and the statements he made in the examination could not be used in a criminal prosecution."[44]
¶ 78. The results of the Spaeth polygraph test showed that he was being deceptive and his probation agent was so informed.[45] The probation agent discussed the results of the polygraph test with Spaeth, and Spaeth then admitted probation violations.[46] The probation agent informed police, who arrested Spaeth for both a probation violation and in connection with a possible additional criminal offense.[47]
¶ 79. This court re-examined the fundamental principles of the privilege against self-incrimination guaranteed by the Fifth Amendment.[48] The court recognized that in some situations, the privilege is self-executing and need not be affirmatively invoked before the statement is deemed compelled.[49] When a probationer must answer questions that require him to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent, the privilege is self-executing and the statements are compelled.[50]
¶ 80. The Spaeth court concluded, based on the evidence in the record, the testimony of the defendant and the defendant's probation agent, and stipulations *666 by the parties that the defendant's participation in the polygraph test was compelled and that any incriminating statements arising from it could not be used against him.[51]
¶ 81. The present case does not provide the extensive record available in Spaeth. The record in the instant case does not include the probation rules, the polygraph requirements, or a finding about what the defendant knew or believed regarding the possible consequences of his incriminating statements.
¶ 82. The defendant has failed to provide sufficient evidence to support his legal argument of compulsion on the basis of the polygraph test. On this record, the court cannot reach the legal conclusion that the defendant's statements were compelled.
* * * *
¶ 83. In sum, the defendant has failed to meet his burden to prove that his initial, oral statements were compelled. Neither the circuit court nor this court can consider the Department of Corrections probation form that the defendant claims advised him that his incriminating statements cannot be used against him in criminal proceedings. The form is not in the record. The parties did not agree about its existence, the details of its use, or the defendant's knowledge of its contents before the defendant made his oral admissions.
¶ 84. The defendant has failed to put sufficient evidence into the record to show that the rules of his probation rendered his incriminating statements compelled. No documents, no testimony, and no undisputed, agreed-upon facts by the parties are in the record to *667 evidence any compulsion of the defendant to admit possession of child pornography to his probation agent.
¶ 85. Because there is not sufficient evidence in the record to show compulsion, we affirm the decision of the court of appeals. The defendant's conviction is affirmed.
¶ 86. By the Court — The decision of the court of appeals is affirmed.

 State v. Sahs, No. 2009AP2916-CR, unpublished slip op. (Wis. Ct. App. Oct. 26, 2010).

 All references to the Wisconsin Statutes are to the 2007-08 version unless otherwise noted.

 The Fifth Amendment to the United States Constitution provides in pertinent part: "No person . .. shall be compelled in any criminal case to be a witness against himself...."
The privilege against self-incrimination is applied to the states through the Fourteenth Amendment's due process clause. Malloy v. Hogan, 378 U.S. 1, 6 (1964).

 Article I, Section 8 of the Wisconsin Constitution states: "No person ... may be compelled in any criminal case to be a witness against himself or herself."

 The defendant filed a second motion to exclude the evidence discovered after a search of his computer, as well as *646 statements made to police, on the ground that the evidence and statements were a direct consequence of the compelled statements to the probation agent. We need not and do not address this second motion because we conclude that the defendant has not carried his burden of proving that his statements to the probation agent were compelled.

 State v. Sahs, No. 2009AP2916-CR, unpublished slip op., ¶¶ 1, 9 (Wis. Ct. App. Oct. 26, 2010).

 When a defendant seeks to exclude prior statements based upon his Fifth Amendment privilege, the burden is on the defendant to establish that the statements at issue are compelled, testimonial, and incriminating. In re Commitment of Mark, 2006 WI 78, ¶ 16, 292 Wis. 2d 1, 718 N.W.2d 90. After a defendant proves that his statements were compelled, testimonial, and incriminating, the burden shifts to the State to demonstrate that the evidence it wishes to use in a criminal prosecution is "derived from a legitimate source wholly independent of the compelled testimony." State v. Spaeth, 2012 WI 95, ¶¶ 38, 74, 343 Wis. 2d 220, 819 N.W.2d 769 (quoting Kastigar v. United States, 406 U.S. 441, 460 (1972)).

 The defendant's motion to suppress his statements was orally denied in open court by the Circuit Court for Milwaukee County, John Franke, Judge. Milwaukee County Circuit Court Judge Jeffrey A. Conen signed the written order of denial and later entered the judgment of conviction.

 A circuit court may predicate its factual findings on undisputed facts. State v. Thierfelder, 174 Wis. 2d 213, 217 n.4, 495 N.W.2d 669 (1993); State v. Schulpius, 2006 WI App 263, ¶¶ 11-12, 298 Wis. 2d 155, 726 N.W.2d 706.

 These facts are taken from the defendant's motion to exclude evidence and the State's response to the defendant's motion to exclude evidence, which were filed with the circuit court.

 There is some confusion in the circuit court briefs and in the briefs before this court whether the date of the polygraph test was December 2006 or December 2005. The defendant's material in the record refers to December 2005. The polygraph report is in the record as an attachment to the documents the State filed in response to the defendant's motion. The report is dated December 2006 and states that the polygraph test was administered in December 2006.

 The circuit court commented that "the parties represent that another polygraph was set for January 13." The State's response to the defendant's motion, however, makes no mention of a January 13 polygraph test.

 The DOC form is not in the record.

 The circuit court explicitly stated that it "won't make findings of fact as to what happened after [the defendant's oral admission of possessing child pornography] because I do not find that those [oral] statements to the probation officer on these undisputed facts must be suppressed .. .."

 Spaeth, 343 Wis. 2d 220, ¶ 30; State v. Felix, 2012 WI 36, ¶ 22, 339 Wis. 2d 670, 811 N.W.2d 775 (citing State v. Eason, 2001 WI 98, ¶ 9, 245 Wis. 2d 206, 629 N.W.2d 625).

 Minnesota v. Murphy, 465 U.S. 420, 426 (1984).

 Id. at 435 (quoted in State v. Spaeth, 2012 WI 95, ¶ 47, 343 Wis. 2d 220, 619 N.W.2d 769).

 Murphy, 465 U.S. at 427 (quoting Garner v. United States, 424 U.S. 648, 654 (1976)).

 Spaeth, 343 Wis. 2d 220, ¶¶ 43, 47 (quoting Minnesota v. Murphy, 465 U.S. 420, 426, 434-35 (1984)).

 Murphy, 465 U.S. at 435-36; Spaeth, 343 Wis. 2d 220, ¶¶ 46-49.

 Murphy, 465 U.S. at 435 (quoted in Spaeth, 343 Wis. 2d 220, ¶ 47).

 Schimke v. Milwaukee & Suburban Transport Co., 34 Wis. 2d 317, 320-21, 149 N.W.2d 659 (1967).

 State v. Marks, 2010 WI App 172, ¶ 20, 330 Wis. 2d 693, 794 N.W.2d 547; State Bank of Hartland v. Arndt, 129 Wis. 2d 411, 423, 385 N.W.2d 219 (Ct. App. 1986).

 Commitment of Mark, 292 Wis. 2d 1, ¶ 25.

 Murphy, 465 U.S. at 427. See also Commitment of Mark, 292 Wis. 2d 1, ¶ 25.

 Murphy, 465 U.S. at 435.

 Id. at 436 (quoted in Spaeth, 343 Wis. 2d 220, ¶ 48).

 Murphy, 465 U.S. at 436.
The Court explained further in Murphy, 465 U.S. at 437, as follows:
Murphy's probation condition proscribed only false statements; it said nothing about his freedom to decline to answer particular questions and certainly contained no suggestion that his probation was conditional on his waiving his [privilege] with respect to further criminal prosecution____Without the benefit of an authoritative state-court construction of the condition, we are hesitant to read into the truthfulness requirement an additional obligation that Murphy refrain from [invoking his privilege].

 The defendant asserts that he was required to take a polygraph test as a condition of his mandatory sex offender treatment. The State contends that the polygraph test was administered because the defendant had "refused to participate in a meaningful way in his group therapy sessions."

 State v. Peebles, 2010 WI App 156, 330 Wis. 2d 243, 792 N.W.2d 212.

 Id., ¶ 2.

 Id., ¶ 3.

 Id., ¶ 5.

 Id., ¶ 4.

 Id., ¶¶ 6-7.

 Id., ¶ 22 (citing Minnesota v. Murphy, 465 U.S. at 436).

 Peebles, 330 Wis. 2d 243, ¶ 20.

 Spaeth, 343 Wis. 2d 220, ¶ 57.

 Spaeth, 343 Wis. 2d 220, ¶¶ 49, 58.
The Spaeth court concluded:
[The probation agent's] own testimony revealed that Spaeth was required to take the polygraph examination or face a sanction, including possible revocation. This compulsion is authorized by statute and rule, demonstrated in the cases, and testified to by the [Department of Corrections] agent involved. All parties agree that this case involves compulsion. As a result, we have no difficulty determining that Spaeth was compelled, under the rules of his probation, to answer truthfully during the polygraph examination.
Spaeth, 343 Wis. 2d 220, ¶ 58.

 Id, ¶ 4.

 Id

 Id, ¶¶ 5-6.

 Id., ¶ 6.

 Id.

 Id., ¶ 8.

 Id., ¶ 9.

 Id., ¶¶ 10-11.

 Id., ¶¶ 31-49.

 Id., ¶¶ 43, 47.

 Murphy, 465 U.S. at 435-36; Spaeth, 343 Wis. 2d 220, ¶¶ 46-49.

 Spaeth, 343 Wis. 2d 220, ¶ 49, 58.