# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2009AP2916-CR |
| COMPLETE TITLE: | |

State of Wisconsin,
  Plaintiff-Respondent,
      v.
Gregory M. Sahs,
  Defendant-Appellant-Petitioner.

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 330 Wis. 2d 498, 792 N.W.2d 240
(Ct. App. 2010 - Unpublished)

| | |
|---|---|
| OPINION FILED: | June 18, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 25, 2013 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Jeffrey A. Conen |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ROGGENSACK, J. concurs. (Opinion filed.) |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs and oral argument by *Mark S. Rosen* and *Rosen and Holzman, LTD.,* Waukesha.

For the plaintiff-respondent, the cause was argued by *Sarah K. Larson*, assistant attorney general, with whom on the briefs was *J.B. Van Hollen*, attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2009AP2916-CR
(L.C. No. 2008CF3217)

STATE OF WISCONSIN        :        IN SUPREME COURT

State of Wisconsin,

      Plaintiff-Respondent,

  v.

Gregory M. Sahs,

      Defendant-Appellant-Petitioner.

**FILED**

**JUN 18, 2013**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 SHIRLEY S. ABRAHAMSON, C.J. This is a review of an unpublished decision of the court of appeals that affirmed the judgment of conviction entered by the Circuit Court for Milwaukee County, Jeffrey A. Conen, Judge.[1]

---

[1] State v. Sahs, No. 2009AP2916-CR, unpublished slip op. (Wis. Ct. App. Oct. 26, 2010).

¶2 Gregory M. Sahs, the defendant, was convicted of possession of child pornography in violation of Wis. Stat. § 948.12(1m) (2007-08).[2]

¶3 The charge of possessing child pornography arose from incriminating admissions the defendant made to his probation agent. The defendant was on probation as a result of a prior conviction for possession of child pornography. After the defendant made incriminating statements to his probation agent, the police were alerted and found the computer the defendant used to access and possess child pornography, leading to a revocation of his probation and these additional criminal charges.

¶4 After being criminally charged, the defendant moved the circuit court to suppress the admissions to his probation agent, claiming that they were compelled, testimonial, and incriminating in violation of his state and federal constitutional privilege against self-incrimination. The Fifth Amendment to the United States Constitution[3] and Article I,

---

[2] All references to the Wisconsin Statutes are to the 2007-08 version unless otherwise noted.

[3] The Fifth Amendment to the United States Constitution provides in pertinent part: "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."

The privilege against self-incrimination is applied to the states through the Fourteenth Amendment's due process clause. Malloy v. Hogan, 378 U.S. 1, 6 (1964).

Section 8 of the Wisconsin Constitution[4] provide that no person shall be compelled in any criminal case to be a witness against himself.

¶5 The defendant's admissions are clearly testimonial and incriminating. The issue is whether the admissions were compelled.

¶6 The legal issue before this court is the same as the legal issue before the circuit court and court of appeals: Should the incriminating statements made by the defendant to his probation agent admitting possession of child pornography be suppressed on the ground that the statements were compelled in violation of the defendant's federal constitutional privilege against self-incrimination?[5]

¶7 The court of appeals concluded that the circuit court properly denied the motions to suppress: "[T]he evidence that Sahs relies upon [namely a Department of Corrections document] does not appear in the record" and "the facts in the record are insufficient to show compulsion."[6]

_____

[4] Article I, Section 8 of the Wisconsin Constitution states: "No person . . . may be compelled in any criminal case to be a witness against himself or herself."

[5] The defendant filed a second motion to exclude the evidence discovered after a search of his computer, as well as statements made to police, on the ground that the evidence and statements were a direct consequence of the compelled statements to the probation agent. We need not and do not address this second motion because we conclude that the defendant has not carried his burden of proving that his statements to the probation agent were compelled.

[6] State v. Sahs, No. 2009AP2916-CR, unpublished slip op., ¶¶1, 9 (Wis. Ct. App. Oct. 26, 2010).

3

¶8 We affirm the decision of the court of appeals.

¶9 The defendant has failed to meet his burden to prove that his initial, oral statements were compelled.[7] Neither the circuit court nor this court can consider the Department of Corrections form that the defendant claims advised him that his incriminating statements cannot be used against him in criminal proceedings. The form is not in the record. The parties did not agree about its existence, the details of its use, or the defendant's knowledge of its contents before the defendant made his oral admissions.

¶10 The defendant has failed to put sufficient evidence into the record to show that the rules of his probation rendered his incriminating statements compelled. No documents, no testimony, and no undisputed, agreed-upon facts by the parties are in the record to evidence any compulsion of the defendant to admit possession of child pornography to his probation agent.

¶11 Because there is not sufficient evidence in the record to show compulsion, we affirm the decision of the court of

---

[7] When a defendant seeks to exclude prior statements based upon his Fifth Amendment privilege, the burden is on the defendant to establish that the statements at issue are compelled, testimonial, and incriminating. In re Commitment of Mark, 2006 WI 78, ¶16, 292 Wis. 2d 1, 718 N.W.2d 90. After a defendant proves that his statements were compelled, testimonial, and incriminating, the burden shifts to the State to demonstrate that the evidence it wishes to use in a criminal prosecution is "derived from a legitimate source wholly independent of the compelled testimony." State v. Spaeth, 2012 WI 95, ¶¶38, 74, 343 Wis. 2d 220, 819 N.W.2d 769 (quoting Kastigar v. United States, 406 U.S. 441, 460 (1972)).

4

appeals, which affirmed the circuit court's order denying suppression of the statements and the judgment of conviction.[8]

I

¶12  We first turn to the facts.  The Complaint charging the defendant with two counts of possession of child pornography was filed on July 2, 2008.  The defendant waived a preliminary hearing.  The State filed the information based on the complaint.  The defendant entered a plea of not guilty to the two counts charged.

¶13  The defendant then filed his motion seeking to suppress the statements he made to his probation agent.  The State opposed the motion.  The circuit court requested that the parties participate in an evidentiary hearing regarding the suppression motion.  Instead, both parties proffered facts in written briefs to the circuit court and stipulated that the circuit court could decide the case based on the factual representations set forth in the briefs.

¶14  The facts set forth here are therefore predominantly taken from the parties' briefs filed in the circuit court.  The

---

[8] The defendant's motion to suppress his statements was orally denied in open court by the Circuit Court for Milwaukee County, John Franke, Judge.  Milwaukee County Circuit Court Judge Jeffrey A. Conen signed the written order of denial and later entered the judgment of conviction.

circuit court explained that it was "dealing with representations here and not a factual record by affidavit."[9]

¶15 As one might suspect from the proceedings we have described thus far, the record in this case relating to the suppression motion is extremely thin. What follows are the parties' undisputed, agreed-upon facts we have culled from the parties' briefs and the findings of fact the circuit court made.

¶16 The parties agree that the defendant was sentenced to probation in 2005 arising from a conviction for possession of child pornography.

¶17 The parties agree that Department of Corrections Probation/Parole Agent Michael Krause was assigned to supervise the defendant's probation and that the defendant was required to participate in sex offender group therapy as a condition of his probation.[10] The other conditions of the defendant's probation are not in the record.

¶18 The parties finally agree that the defendant was on probation when, in January 2007, he made statements to Agent Krause indicating that he again possessed child pornography. From there, the parties' factual assertions diverge.

---

[9] A circuit court may predicate its factual findings on undisputed facts. State v. Thierfelder, 174 Wis. 2d 213, 217 n.4, 495 N.W.2d 669 (1993); State v. Schulpius, 2006 WI App 263, ¶¶11-12, 298 Wis. 2d 155, 726 N.W.2d 706.

[10] These facts are taken from the defendant's motion to exclude evidence and the State's response to the defendant's motion to exclude evidence, which were filed with the circuit court.

¶19 The defendant asserts that he was required to take a polygraph test as a condition of sex offender treatment and that he failed this polygraph test on December 15, 2006,[11] when he untruthfully answered that he had not broken any of his probation rules.

¶20 The State, in contrast, contends that the polygraph test was administered because the defendant had "refused to participate in a meaningful way in his group therapy sessions." The focus of the polygraph test was on the defendant's prior sexual history. In his pre-polygraph examination interview, the defendant admitted that he had not been truthful about this history previously; the polygraph test then focused on whether the defendant had been truthful in the pre-polygraph exam interview. The result of the polygraph test was that the defendant was truthful.

¶21 The parties agree that the defendant was terminated from his group therapy sessions. But, the parties dispute the reason for termination. The defendant believes he was terminated because he failed the polygraph test. The State asserts that the defendant was terminated because the information that he provided about his prior sexual history to

---

[11] There is some confusion in the circuit court briefs and in the briefs before this court whether the date of the polygraph test was December 2006 or December 2005. The defendant's material in the record refers to December 2005. The polygraph report is in the record as an attachment to the documents the State filed in response to the defendant's motion. The report is dated December 2006 and states that the polygraph test was administered in December 2006.

the polygraph examiner in a pre-test interview should have been disclosed during his previous group therapy sessions.

¶22 The parties agree that the defendant was given an opportunity to regain admittance to group therapy. They do not agree on the conditions he had to meet for re-admittance or whether he was re-admitted.

¶23 The defendant asserts that he was required to take another polygraph test, which was scheduled for January 13, 2007.[12] The State asserts that the defendant was required only to write a letter of full disclosure regarding his prior sexual history and that when he completed the letter, he was allowed back into therapy. The State asserts that the defendant had already been allowed back into his group therapy when he and Agent Krause met on January 12, 2007, and that Agent Krause had no intention of initiating revocation proceedings against the defendant, at that time, for his probation violations.

¶24 The State's brief sets forth Agent Krause's recollection about the events of January 2007. The State asserts that in January 2007, Agent Krause received a phone call from the defendant, who wanted to come in to talk "about some things." According to Agent Krause, he and the defendant agreed upon a mutually acceptable date, which was January 12, 2007.

---

[12] The circuit court commented that "the parties represent that another polygraph was set for January 13." The State's response to the defendant's motion, however, makes no mention of a January 13 polygraph test.

¶25 The date of the meeting (Jan. 12) was the day before the date the defendant claims that he was required to take a polygraph examination (Jan. 13) in order to get back into therapy. The State makes no mention of this second polygraph test.

¶26 The parties agree that at the January 12, 2007 meeting, the defendant orally told Agent Krause that he had violated the rules of his probation by using a computer he kept at a friend's house to access child pornography. According to Agent Krause, the defendant volunteered that he had been violating the rules of his probation.

¶27 According to the defendant and Agent Krause, Agent Krause wrote down the defendant's statements on a Department of Corrections form, which the defendant signed. The defendant asserts that this Department form included a notification and a box checked off next to the following statement:

> I have been advised that I must account in a true and accurate manner for my whereabouts and activities, and that failure to do so is a violation for which I could be revoked. I have also been advised that none of this information can be used against me in criminal proceedings.[13]

¶28 The defendant does not state, either in the brief he filed in this court or in the motion he filed in the circuit court, when he was first advised that his statements could not be used against him in a criminal proceeding or whether he saw the form before he gave the oral statements.

---

[13] The DOC form is not in the record.

9

¶29 The State agrees that Agent Krause wrote down the defendant's statement on a Department form but neither denies nor concedes the existence of the Department form or the notification that the defendant described.  The State's brief in this court asserts that it never conceded or stipulated that the defendant was aware of the written notification when he gave his earlier, oral statements.  The State's position here is that the defendant did not proffer any evidence to support his assertion that he was aware of the written notification of immunity when he gave his earlier, oral statements.[14]

¶30 The parties agree that after the defendant made the incriminating statements, Agent Krause took the defendant into custody and initiated revocation proceedings.

¶31 There is no dispute about what happened thereafter.

¶32 Agent Krause notified the West Allis Police Department of the defendant's statements.  The police arranged to retrieve the computer the defendant admitted to using.

¶33 Detective Jacque Chevremont of the West Allis Police Department met with the defendant twice while he was in custody at the Milwaukee Secure Detention Facility.  Detective Chevremont read the defendant his Miranda warnings both times; the defendant stated he understood the warnings and that he was willing to speak with the Detective.  The defendant admitted

---

[14] The circuit court explicitly stated that it "won't make findings of fact as to what happened after [the defendant's oral admission of possessing child pornography] because I do not find that those [oral] statements to the probation officer on these undisputed facts must be suppressed . . . ."

that while on probation, he downloaded child pornography on a computer that he kept at a friend's house.

¶34  In ruling on the suppression motions, the circuit court assumed that the defendant was advised of the standard conditions of probation, which include providing true and correct information when asked.   Neither the conditions of probation imposed on the defendant nor any "standard conditions of probation" are in the record before this court.

¶35  The circuit court's findings of fact to be upheld as not clearly erroneous had to be based in the present case on the parties' agreed-upon, undisputed facts.   The circuit court made the following factual findings:

- The defendant initiated the January 12, 2007 meeting with his probation agent.
- The defendant volunteered the information that he had been violating the probation rules by using a friend's computer to download images of child pornography.

¶36  With regard to the circuit court's first finding, the parties agreed that the defendant initiated the January 12, 2007 meeting with his probation agent.

¶37  With regard to the circuit court's second finding, the circuit court, relying on common sense, assumed that the probation agent would have asked the defendant some questions. Nevertheless, the circuit court found that the defendant volunteered that he had violated the rules of probation.   The State asserted that the defendant volunteered that he had been

11

violating the probation rules. The defendant did not characterize his statements as volunteered. Neither party made any representation to the circuit court about whether the defendant made any statement in response to questions.

¶38 The circuit court denied the defendant's motions to suppress, concluding that the facts were insufficient to show compulsion and that simply because an agent might revoke probation is not enough to establish compulsion.

¶39 After the circuit court denied the defendant's motions to suppress, the defendant changed his plea to guilty of one count of possession of child pornography pursuant to plea negotiations.

II

¶40 Whether the defendant's statements to his probation agent were compelled in violation of his constitutional right against self-incrimination presents a question of constitutional fact. In reviewing issues of constitutional fact, first, we review the circuit court's findings of historical fact; we will uphold them unless they are clearly erroneous. Second, we determine the application of constitutional principles independently of the circuit court and court of appeals, benefitting from their analyses.[15]

---

[15] Spaeth, 343 Wis. 2d 220, ¶30; State v. Felix, 2012 WI 36, ¶22, 339 Wis. 2d 670, 811 N.W.2d 775 (citing State v. Eason, 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625).

¶41 A probationer has a Fifth Amendment privilege against compelled self-incrimination.[16] A critical issue is whether the probationer must claim the privilege or whether the situation gives rise to a self-executing privilege.

¶42 The United States Supreme Court has declared that an ordinary witness who is "merely required to appear and give testimony" must affirmatively claim the privilege.[17] "[I]n the ordinary case, if a witness under compulsion to testify makes disclosures instead of claiming the privilege, the government has not 'compelled' him to incriminate himself."[18]

¶43 However, the United States Supreme Court has also recognized exceptions to the general rule requiring a person to affirmatively assert his or her Fifth Amendment privilege. In some situations, the privilege is self-executing and thus need not be affirmatively invoked before the statement is deemed compelled.[19] One of these "self-executing situations" occurs when a probationer must answer questions that require him to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent.[20]

---

[16] Minnesota v. Murphy, 465 U.S. 420, 426 (1984).

[17] Id. at 435 (quoted in State v. Spaeth, 2012 WI 95, ¶47, 343 Wis. 2d 220, 619 N.W.2d 769).

[18] Murphy, 465 U.S. at 427 (quoting Garner v. United States, 424 U.S. 648, 654 (1976)).

[19] Spaeth, 343 Wis. 2d 220, ¶¶43, 47 (quoting Minnesota v. Murphy, 465 U.S. 420, 426, 434-35 (1984)).

[20] Murphy, 465 U.S. at 435-36; Spaeth, 343 Wis. 2d 220, ¶¶46-49.

¶44 The United States Supreme Court has explained the difference between the ordinary witness who must claim the privilege when he is "merely required to appear and give testimony" and certain situations relating to a probationer whose privilege may be self-executing when he is required to answer incriminating questions. The Supreme Court has differentiated between the two as follows:

> The threat of punishment for reliance on the privilege distinguishes cases of this sort [namely those involving a probationer] from the ordinary case in which a witness is merely required to appear and give testimony. A state may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self-executing privilege. The result may be different if questions put to the probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution. There is thus a substantial basis in our cases for concluding that if the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution.[21]

### III

¶45 The defendant asserts that his statements to his probation agent were compelled in violation of his federal constitutional privilege against self-incrimination for two reasons. First, he claims that he signed a Department of

---

[21] Murphy, 465 U.S. at 435 (quoted in Spaeth, 343 Wis. 2d 220, ¶47).

14

Corrections document that notified him that his failure to account truthfully about his activities is a violation for which his probation could be revoked and that "none of the information can be used against [him] in criminal proceedings."  Second, he claims that his statements were compelled because he allegedly was required to report his activities truthfully to his probation agent and was required to take a mandatory polygraph test and knew that if he failed the polygraph test, his probation could be revoked.

¶46  We discuss each claim in turn.

A

¶47  We turn first to the defendant's claim of compulsion relying on the Department of Corrections form described above. This form, according to the defendant, advised the defendant that the statements he made to the probation agent were not to be used against him in a criminal proceeding.

¶48  The burden was on the defendant in the circuit court to prove that his statement to the probation agent was compelled and that use of the statement in this criminal proceeding violates the federal constitutional privilege against self-incrimination.

¶49  The circuit court and court of appeals ruled that the defendant did not meet his burden.

¶50  The Department of Corrections form upon which the defendant relies is not part of the circuit court record or part of the record before this court.  The well-established rule is

15

that appellate review is limited to the record presented.[22] The burden is on the appellant, here the defendant, to ensure that the record is sufficient to address issues raised on appeal.[23]

¶51 No undisputed, agreed-upon facts by the parties or other evidence appears in the record to prove that the defendant signed the form or that the defendant was informed or knew of the contents of the form before he gave oral incriminating statements to his probation agent.

¶52 The circuit court made no findings of fact regarding the existence of the Department form or the conversation that occurred between the defendant and Agent Krause when the form was allegedly completed and signed.

¶53 Because the Department form is not in the record and nothing about the execution of the form is in the parties' undisputed, agreed-upon facts, the defendant's argument that the form immunized his statements fails.

B

¶54 We turn now to the defendant's claim that the statements to the probation agent were compelled by the threat of revocation of his conditional liberty. The defendant makes two arguments. He argues that the mere fact that he was required to appear and report truthfully to his probation agent

---

[22] Schimke v. Milwaukee & Suburban Transport Co., 34 Wis. 2d 317, 320-21, 149 N.W.2d 659 (1967).

[23] State v. Marks, 2010 WI App 172, ¶20, 330 Wis. 2d 693, 794 N.W.2d 547; State Bank of Hartland v. Arndt, 129 Wis. 2d 411, 423, 385 N.W.2d 219 (Ct. App. 1986).

16

is sufficient to establish compulsion. He also argues that the fact that he was required to take a polygraph test establishes compulsion.

1

¶55 The case law establishes that the mere requirement on a probationer to appear and speak "truthfully to his or her probation (or parole) officer is insufficient to establish compulsion."[24]

¶56 The seminal case regarding probationers and self-incrimination is <u>Minnesota v. Murphy</u>, 465 U.S. 420 (1984). The United States Supreme Court recognized that requiring Murphy, a probationer, to appear and answer questions truthfully was insufficient to establish compulsion.[25] The Court declared that if Murphy was in a situation that gave rise to a self-executing privilege against self-incrimination——such that "the State, either expressly or by implication, assert[ed] that invocation of the privilege would lead to revocation of probation"——then "the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution,"[26] even though the privilege was not affirmatively invoked. See ¶¶41-44, <u>supra</u>.

---

[24] <u>Commitment of Mark</u>, 292 Wis. 2d 1, ¶25.

[25] <u>Murphy</u>, 465 U.S. at 427. <u>See also</u> <u>Commitment of Mark</u>, 292 Wis. 2d 1, ¶25.

[26] <u>Murphy</u>, 465 U.S. at 435.

17

¶57 As to Murphy, the Court concluded that the State of Minnesota did not go further than requiring Murphy to appear and give testimony.  It did not "require[ ] him to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent."[27]  The Court in Murphy concluded that there was no evidence in the record showing that the State would have revoked the probation or that the probationer (Murphy) believed his probation would have been revoked if he chose to remain silent.[28]  Accordingly, Murphy did not prove his statement was compelled.

¶58 In the present case, there is no evidence that the State, either expressly or by implication, told the defendant that his refusal to speak to his probation agent or his invocation of his privilege against self-incrimination would lead to the revocation of his probation.  The defendant claims

---

[27] Id. at 436 (quoted in Spaeth, 343 Wis. 2d 220, ¶48).

[28] Murphy, 465 U.S. at 436.

The Court explained further in Murphy, 465 U.S. at 437, as follows:

> Murphy's probation condition proscribed only false statements; it said nothing about his freedom to decline to answer particular questions and certainly contained no suggestion that his probation was conditional on his waiving his [privilege] with respect to further criminal prosecution. . . . Without the benefit of an authoritative state-court construction of the condition, we are hesitant to read into the truthfulness requirement an additional obligation that Murphy refrain from [invoking his privilege].

18

that he believed his probation would be revoked if he failed to tell his probation agent the truth, but there is no evidence in the record indicating that the defendant was informed of such potential revocation. The parties did not agree that revocation was a consequence or that the defendant believed his probation would have been revoked if he chose to remain silent.

¶59 Nothing in the record supports the defendant's claim that there was an explicit consequence of revocation for failing to tell the truth or that the defendant believed that probation would be revoked if he did not tell the truth. Thus, the probationer in the present case, like the probationer in Minnesota v. Murphy, has not proved his claim of compulsion.

2

¶60 The defendant appears to rest his claim of compulsion not only on the fact that the rules of probation required him to tell the truth, but also on the fact that he was required to take a polygraph test and that he knew that if he did not admit to his behavior it would be discovered the next day during his scheduled polygraph test. The defendant argues that on the basis of his past experiences, he made the incriminating statement knowing that if he did not give an accurate and truthful accounting of his behavior before the mandated polygraph test, he would be in violation of his probation rules and he would face revocation of his probation.

¶61 Again, the defendant has not carried his burden of proving compulsion. Nothing in the record supports the defendant's claim of compulsion regarding the polygraph test.

19

¶62 The defendant's original rules of supervision, which the defendant asserts require a polygraph test, are not in the record. The requirement of a polygraph test is not an undisputed fact.[29] Nothing appears in the record to support the defendant's assertion that he was required to take a polygraph test the day after he made his statements.

¶63 The circuit court could not and did not determine whether the defendant was required to take a mandatory polygraph test as a condition of his probation or that he had a mandatory polygraph test scheduled for January 13, 2007, which he knew he would fail. Nothing in the record describes the rules governing the polygraph test.

¶64 Without any evidence in the record, the defendant fails to demonstrate that his admission to the probation agent was compelled by his being required to take a polygraph test.

¶65 The fact that a probationer was required to take a polygraph test as a condition of probation played an important part in both State v. Peebles, 2010 WI App 156, 330 Wis. 2d 243, 792 N.W.2d 212, and State v. Spaeth, 2012 WI 95, 343 Wis. 2d 220, 819 N.W.2d 769, in the court's determining whether the probationers' statements were compelled.

---

[29] The defendant asserts that he was required to take a polygraph test as a condition of his mandatory sex offender treatment. The State contends that the polygraph test was administered because the defendant had "refused to participate in a meaningful way in his group therapy sessions."

¶66 The Peebles and Spaeth cases were decided after the circuit court's and court of appeals' decisions in the present case and did not guide these decisions.

¶67 In Peebles, the court of appeals was faced with determining whether a probationer's incriminating statements were compelled.[30] Peebles was placed on probation after pleading no contest to sexual assault. The court ordered "Sex Counseling/register/be compliant with Sex Offender Program."[31]

¶68 Peebles subsequently met with his probation agent and signed the Rules of Community Supervision and the Standard Sex Offender Rules, which were entered into the record. The rules warned him that his probation could be revoked if he violated the rules.[32]

¶69 One requirement of Peebles' probation was that he take a polygraph test.[33] Peebles testified that he understood that if he did not follow the rules of supervision, including participating in sex offender treatment and cooperating with his treatment counselor, which required talking in treatment about his sexual behavior, he could face revocation from supervision or incarceration.[34]

---

[30] State v. Peebles, 2010 WI App 156, 330 Wis. 2d 243, 792 N.W.2d 212.

[31] Id., ¶2.

[32] Id., ¶3.

[33] Id., ¶5.

[34] Id., ¶4.

¶70 Peebles' probation was ultimately revoked based on comments he made in sex offender counseling and to the polygraph examiner immediately before a polygraph examination.[35]

¶71 The court of appeals explained in Peebles that "a probationer's statements are compelled if he or she must choose between providing them or jeopardizing his or her conditional liberty by remaining silent."[36]

¶72 The court of appeals concluded that Peebles' statements were compelled because the rules of his supervision, which were in the record, required that he be truthful, that he submit to polygraph tests, and that he fully cooperate with and successfully complete sex offender counseling. Peebles "then gave his statements, at least in part, because he was required to take lie detector tests."[37]

¶73 In Spaeth, this court explained that the Peebles decision demonstrates how statements made to probation agents may be "compelled by way of probation rules." This court explained that based on Peebles' testimony about his subjective view of the consequences of failure to take a polygraph test, the court of appeals held that Peebles' statements were compelled.[38]

---

[35] Id., ¶¶6-7.

[36] Id., ¶22 (citing Minnesota v. Murphy, 465 U.S. at 436).

[37] Peebles, 330 Wis. 2d 243, ¶20.

[38] Spaeth, 343 Wis. 2d 220, ¶57.

¶74 The record before the court in the present case does not support the same conclusion as did the record in Peebles. In the present case, the defendant's probation rules are not in the record. The parties did not reach undisputed, agreed-upon facts regarding the defendant's knowledge or belief that his probation would be revoked unless he told the truth.

¶75 In the present case, the court is unable to determine what the probation rules required and what the defendant believed would be the consequences of his failing to tell the truth. Thus, the court is unable to conclude, from the record, that the defendant's probation rules required him to be truthful, required him to submit to polygraph tests, or required revocation of probation if he violated the rules.

¶76 In Spaeth, the State and Spaeth stipulated that Spaeth's participation in a polygraph test while on probation was compelled.[39] A condition of Spaeth's probation was a

---

[39] Spaeth, 343 Wis. 2d 220, ¶¶49, 58.

The Spaeth court concluded:

[The probation agent's] own testimony revealed that Spaeth was required to take the polygraph examination or face a sanction, including possible revocation. This compulsion is authorized by statute and rule, demonstrated in the cases, and testified to by the [Department of Corrections] agent involved. All parties agree that this case involves compulsion. As a result, we have no difficulty determining that Spaeth was compelled, under the rules of his probation, to answer truthfully during the polygraph examination.

Spaeth, 343 Wis. 2d 220, ¶58.

mandatory polygraph test at least once per year.[40]  Spaeth was "required to take this examination, required to cooperate with the examiner, and required to answer questions truthfully.  His failure to take the polygraph examination could have resulted in revocation of his probation.  His failure to answer questions truthfully also could have resulted in a serious sanction."[41]

¶77 Before taking the polygraph test, Spaeth signed a "consent form" provided by the test administrator, but the form he signed was not, according to the court, an accurate statement of the law for this probationer because the form stated that his statement may be used against him at trial.[42]  The court determined that his "failure to take the polygraph examination could have resulted in his revocation, and his refusal to sign the 'consent form' could have been deemed a refusal to take the polygraph examination.  In addition, any statements that Spaeth made during the polygraph examination were subject to use and derivative use immunity and could not be used against him at a criminal trial."[43]  The probation agent "later testified that Spaeth was aware that the polygraph results and the statements he made in the examination could not be used in a criminal prosecution."[44]

---

[40] Id., ¶4.

[41] Id.

[42] Id., ¶¶5-6.

[43] Id., ¶6.

[44] Id.

24

¶78 The results of the Spaeth polygraph test showed that he was being deceptive and his probation agent was so informed.[45] The probation agent discussed the results of the polygraph test with Spaeth, and Spaeth then admitted probation violations.[46] The probation agent informed police, who arrested Spaeth for both a probation violation and in connection with a possible additional criminal offense.[47]

¶79 This court re-examined the fundamental principles of the privilege against self-incrimination guaranteed by the Fifth Amendment.[48] The court recognized that in some situations, the privilege is self-executing and need not be affirmatively invoked before the statement is deemed compelled.[49] When a probationer must answer questions that require him to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent, the privilege is self-executing and the statements are compelled.[50]

¶80 The Spaeth court concluded, based on the evidence in the record, the testimony of the defendant and the defendant's probation agent, and stipulations by the parties that the

---

[45] Id., ¶8.

[46] Id., ¶9.

[47] Id., ¶¶10-11.

[48] Id., ¶¶31-49.

[49] Id., ¶¶43, 47.

[50] Murphy, 465 U.S. at 435-36; Spaeth, 343 Wis. 2d 220, ¶¶46-49.

defendant's participation in the polygraph test was compelled and that any incriminating statements arising from it could not be used against him.[51]

¶81 The present case does not provide the extensive record available in <u>Spaeth</u>. The record in the instant case does not include the probation rules, the polygraph requirements, or a finding about what the defendant knew or believed regarding the possible consequences of his incriminating statements.

¶82 The defendant has failed to provide sufficient evidence to support his legal argument of compulsion on the basis of the polygraph test. On this record, the court cannot reach the legal conclusion that the defendant's statements were compelled.

* * * *

¶83 In sum, the defendant has failed to meet his burden to prove that his initial, oral statements were compelled. Neither the circuit court nor this court can consider the Department of Corrections probation form that the defendant claims advised him that his incriminating statements cannot be used against him in criminal proceedings. The form is not in the record. The parties did not agree about its existence, the details of its use, or the defendant's knowledge of its contents before the defendant made his oral admissions.

¶84 The defendant has failed to put sufficient evidence into the record to show that the rules of his probation rendered

---

[51] <u>Spaeth</u>, 343 Wis. 2d 220, ¶49, 58.

his incriminating statements compelled.   No documents, no testimony, and no undisputed, agreed-upon facts by the parties are in the record to evidence any compulsion of the defendant to admit possession of child pornography to his probation agent.

¶85  Because there is not sufficient evidence in the record to show compulsion, we affirm the decision of the court of appeals.  The defendant's conviction is affirmed.

¶86  *By the Court*——The decision of the court of appeals is affirmed.

¶87 PATIENCE DRAKE ROGGENSACK, J. *(concurring).* Gregory Sahs' incriminating, oral statement to his probation agent, made when he was not in custody, was voluntarily made without the threat that he would be revoked if he did not speak. Accordingly, his statement was not compelled and his Fifth Amendment privilege against self-incrimination for the crime he disclosed was not self-executing. See Minnesota v. Murphy, 465 U.S. 420, 436 (1984).

¶88 I write to confirm for the reader that the majority opinion does not rest on the Wisconsin Constitution, but rather, that the majority opinion is based solely on the Fifth Amendment of the United States Constitution, which is the only constitutional provision that the parties argued before us.[1] I also write to draw together foundational principles that control when the Fifth Amendment privilege against self-incrimination becomes self-executing for probationers and to draw attention to unduly broad statements in some opinions that could cause confusion if the statements were applied without a thorough consideration of all underlying legal principles. Because my analysis differs from the majority opinion's analysis but also results in the conclusion that Sahs' oral statement was not compelled, I do not join the majority opinion, but respectfully concur.

---

[1] Even though Sahs argued both state and federal constitutional provisions in his motion to the circuit court, majority op., ¶4, he has not done so before us.

1

## I. BACKGROUND

¶89 In 2007, Sahs was convicted of possession of child pornography, contrary to Wis. Stat. § 948.12(1m). This was Sahs' second conviction for possession of child pornography, the first one occurring in 2005. When the incriminating statements giving rise to the second conviction were made, Sahs was on probation for the 2005 conviction. He made the incriminating statements to his probation agent, Michael Krause.

¶90 Prior to making incriminating statements, Sahs called Krause and asked to come in and "talk about some things." Sahs set up an appointment to meet with Krause on a mutually convenient date, January 12, 2007.

¶91 When Sahs appeared for his appointment, he told Krause that he had accessed child pornography through a computer he kept at a friend's house. Sahs does not allege that he made this oral statement in response to a question from Krause about either a pending charge or particular criminal activities, nor does he allege that Krause, or the conditions of his probation, threatened revocation of probation if Sahs refused to answer such questions. After Sahs orally incriminated himself of violating Wis. Stat. § 948.12(1m), Krause asked Sahs to provide a written statement on a standard Department of Corrections (DOC) form. Sahs did so; however, the DOC form is not in the record.[2]

---

[2] Because the record does not contain the DOC form, and because there is no contention that the written statement somehow modified Sahs' earlier statement, I confine my subsequent discussion to Sahs' oral statement to his probation agent.

¶92 At the time of Sahs' incriminating oral statement to Krause, he alleged he was scheduled to take a polygraph test within a few days as part of his probation requirements for his 2005 conviction. Sahs alleges that this upcoming obligation generated his need to speak with Krause.

¶93 After Sahs made his oral and written incriminating statements, Krause initiated revocation proceedings. Krause also notified the West Allis Police Department, who took Sahs into custody. Detective Chevremont gave Sahs Miranda[3] warnings. Sahs said that he understood the warnings and was willing to speak with the detective. Sahs then admitted that while he was on probation, he downloaded child pornography on the computer he kept at his friend's house. Based on his admissions, Sahs was charged with possessing child pornography, in violation of Wis. Stat. § 948.12(1m).

¶94 As the matter proceeded before the circuit court, Sahs moved to suppress both the oral and written statements he made to Krause and his statements to Chevremont. The circuit court found that Sahs initiated the January 12, 2007 meeting with Krause, and that he volunteered that he had downloaded child pornography onto a computer he kept at a friend's home. The circuit court concluded that no Fifth Amendment violation occurred and denied Sahs' motion to suppress.

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966), concludes that a suspect has the right to remain silent and to have an attorney present for any questioning. The warnings arising from Miranda also caution that any statements the suspect makes can be used against him or her.

3

¶95 On appeal, as well as on this review, Sahs contends that his statements to Krause were compelled by the rules of probation to which he was subject because he was required to appear and give truthful answers to questions; and therefore, his Fifth Amendment privilege against self-incrimination was self-executing, requiring suppression of his incriminating statements. He also contends that the DOC form on which he provided a written admission of violating Wis. Stat. § 948.12(1m) notified him that his statement thereon would not be used in a subsequent criminal proceeding, thereby providing another ground upon which to suppress his incriminating statements. However, as I noted, that form is not in the record before us.

## II. DISCUSSION

### A. Standard of Review

¶96 Whether a statement was testimonial, incriminating and compelled, are questions of law for our independent review. Murphy, 465 U.S. at 426. Whether testimony was voluntary, thereby waiving the defendant's privilege against self-incrimination, involves the application of constitutional principles to the facts found by the circuit court. This also presents a question of law for our independent review. State v. Ward, 2009 WI 60, ¶17, 318 Wis. 2d 301, 767 N.W.2d 236. And finally, we uphold the factual findings of the circuit court unless they are clearly erroneous. State v. Novy, 2013 WI 23, ¶22, 346 Wis. 2d 289, 827 N.W.2d 610.

### B. General Fifth Amendment Principles[4]

¶97 The privilege, or right, to remain silent afforded by the Fifth Amendment comes into play when a defendant is compelled to give testimony that is incriminating. Murphy, 465 U.S. at 426. A defendant does not lose the Fifth Amendment privilege against self-incrimination when he is convicted of a crime. Baxter v. Palmigiano, 425 U.S. 308, 316 (1976).

¶98 Cases parsing a defendant's Fifth Amendment privilege against self-incrimination arise in two broad categories. Either the defendant remained silent, thereby maintaining his Fifth Amendment privilege and objected to the sanction imposed for his silence, or the defendant made a statement and then moved to suppress his statement.

### 1. Defendant is silent

¶99 Generally, a witness must remain silent rather than answer questions in order assert his Fifth Amendment privilege against self-incrimination. Murphy, 465 U.S. at 429. However, a witness may be compelled to testify, notwithstanding the Fifth Amendment privilege, if he is granted use-immunity for his

---

[4] The Fifth Amendment to the United States Constitution provided in relevant part: "No person . . . shall be compelled in any criminal case to be a witness against himself."

answers to questions that may incriminate him. <u>Kastigar v. United States</u>, 406 U.S. 441, 453 (1972).[5]

¶100 Only certain types of questions, for example, those that are related to pending charges or relevant to particular criminal activity, will implicate the Fifth Amendment if the probationer is required to answer rather than to remain silent. <u>State v. Evans</u>, 77 Wis. 2d 225, 227-28, 252 N.W.2d 664 (1977). Stated otherwise, it is those types of questions that generate testimony that is incriminating. <u>Id.</u> Therefore, requiring answers to questions such as whether the probationer has been following the curfew requirements of his probation, generally are not sufficient to draw in the protections of the Fifth Amendment, even though they could lead to revocation of probation. <u>See</u> <u>id.</u> at 230 (explaining that a probationer enjoys a conditional liberty that is made possible by the legislature and the probationer's adhering to the rules of the probation).

¶101 A probationer may be forced to relinquish his right to silence and be compelled to answer questions that were "prompted by pending charges or accusations of particular criminal activity" if he is advised that his responses "could not be used against him in a subsequent criminal proceeding arising out of

---

[5] <u>Kastigar v. United States</u>, 406 U.S. 441 (1972), established the scope of Fifth Amendment immunity as "use-immunity," which is immunity for the use and derivative use of compelled testimony that is incriminating. <u>Id.</u> at 453. Use-immunity contrasts with "transactional immunity," which is absolute immunity from prosecution for the crime to which the compelled, incriminating testimony relates. <u>Id.</u> However, <u>Kastigar</u> did not address the criteria to be applied when determining whether testimony was compelled.

the same fact situation." Id. at 235-236. If the probationer nevertheless refuses to answer and if his probation was revoked because of his silence, no Fifth Amendment violation occurred. Id. at 236 (explaining that a remand was necessary to advise Evans that if he responded to questions that were incriminating, his answers would not be used against him in violation of his Fifth Amendment privilege against self-incrimination).

¶102 However, not all penalties levied when a defendant refuses to speak are significant enough to implicate the Fifth Amendment. See McKune v. Lile, 536 U.S. 24, 36 (2002) (explaining that a prison inmate's silence resulting in dismissal from sex-offender treatment program and the subsequent transfer to a less desirable penal institution were not adverse consequences significant enough to affect a defendant's Fifth Amendment privilege).

¶103 State v. Thompson, 142 Wis. 2d 821, 419 N.W.2d 564 (Ct. App. 1987), abrogated on other grounds by Arizona v. Fulminante, 499 U.S. 279 (1991), provides a helpful discussion, but it requires careful reading and an understanding of the cases on which Thompson relies. Thompson, while in custody and without being given Miranda warnings, initially refused to answer questions posed by his probation agent about his whereabouts on the day of a robbery and shooting. Id. at 826. While still in custody and after being served with notice of a revocation hearing, Thompson was again questioned and made incriminating statements. Id. at 826-27. Thompson's answers were later used at trial. Id. at 827.

7

¶104 Although there are some sweeping statements in the Thompson decision that could be read to expand the principles established in Murphy, Thompson's holding is proscribed by three requirements: First, Thompson is based on the Fifth Amendment and therefore, it must follow United States Supreme Court precedent; second, the questions inquired about pending charges or particular criminal activity, id. at 830-31; and third, the questioning occurred while Thompson was in custody and without the benefit of Miranda warnings, id. at 826-27. The failure to give Miranda warnings prior to a custodial interrogation is sufficient, standing alone, to suppress Thompson's incriminating statements as compelled self-incrimination, according to Murphy. See Murphy, 465 U.S. at 429-30.

¶105 Our decision in Tate v. Schwarz, 2002 WI 127, 257 Wis. 2d 40, 654 N.W.2d 438, presents another facet of the Fifth Amendment privilege against self-incrimination. "Tate was convicted of repeated sexual assault of a child after a jury trial in which he testified and denied the offense." Id., ¶2. The procedural posture of the case was critical to the conclusions we reached. To explain, Tate was placed on probation and ordered to attend a sex-offender treatment program, which required him to admit the sexual assaults at a time when his conviction was up on appeal. Id. He refused, asserting his Fifth Amendment privilege. Id. He was terminated from the program and his probation was revoked. Id.

¶106 Tate objected to the termination of probation. He asserted that he had not been offered use-immunity, and he had

8

not been told that statements made in treatment would not be used against him in the event that his appeal resulted in a new trial. Id. ¶11. He also was concerned that the requested admission could result in a perjury charge. Id. We agreed that because of the potential for new criminal consequences for the same crime for which he was on probation, Tate's Fifth Amendment privilege had been contravened by the probation revocation that resulted from his silence when use-immunity was not offered. Id., ¶4. We crafted a very narrow decision in which we explained that there would be no Fifth Amendment violation in requiring admissions in therapy sessions for the crime of conviction if no threat of new criminal consequences pertained. Id., ¶19 n.6 (citing State v. Carrizales, 191 Wis. 2d 85, 92, 528 N.W.2d 29 (Ct. App. 1995)).

### 2. Defendant speaks

¶107 As set out above, it is the general rule that a witness must remain silent rather than answer questions if he chooses to assert his Fifth Amendment privilege against self-incrimination. Murphy, 465 U.S. at 429. However, Murphy established certain situations where the application of this general rule does not pertain, e.g., when the witness is in custody and has not received Miranda warnings. Id.; see also Thompson, 142 Wis. 2d at 827. This exception for custodial questioning from the general rule that the Fifth Amendment privilege must be asserted, is driven by the inherently coercive nature of police custody. Murphy, 465 U.S. at 29-30.

9

¶108 It was argued in Murphy that the five factors set out below could result in a custody-like coercive setting for probationers that should result in exceptions from the obligation to remain silent when asserting the Fifth Amendment privilege: (1) that the probation officer "could compel [] attendance and truthful answers;" (2) that "the probation officer consciously sought incriminating evidence;" (3) that probationer "did not expect questions about prior criminal conduct and could not seek counsel before attending the meeting;" (4) that "there were no observers to guard against abuse or trickery;" and (5) "interrogator's insinuations that the interrogation will continue until a confession is obtained." Id. at 431-33. However, the Supreme Court concluded that those factors, either individually or taken all together, are insufficient to excuse the failure to "claim the privilege in a timely manner" by remaining silent. Id. at 431.

¶109 An exception to the obligation to remain silent in order to invoke the Fifth Amendment privilege against self-incrimination, in addition to that set out in Murphy, occurs when a probationer is required to appear and respond to questions and the state seeks "to induce the [probationer] to forgo his Fifth Amendment privilege by threatening to impose economic or other sanctions 'capable of forcing the self-incrimination which the Amendment forbids.'" Id. at 434 (quoting Lefkowitz v. Cunningham, 431 U.S. 801, 806 (1977)).

¶110 To explain further, Cunningham arose in the context of attempted enforcement of a New York statute that automatically

10

removed political office-holders from office for refusing to sign a document waiving the Fifth Amendment privilege against self-incrimination prior to being questioned before a grand jury. Cunningham, 431 U.S. at 802-03. The Supreme Court concluded that because of the statutory, automatic removal from office that resulted from refusing to waive the Fifth Amendment privilege to remain silent, the questioning involved an unconstitutional threat unless use-immunity was provided in exchange for the waiver prior to questioning. Id. at 809.

¶111 When a state's parole revocation statute does not automatically afford revocation, even when the probation agent seeks revocation, the presence of such a statute, without more, is not sufficient to constitute a threat of the type that results in compelled testimony violative of the Fifth Amendment. See Murphy, 465 U.S. at 437 (explaining that "[o]n its face, Murphy's probation condition proscribed only false statements; it said nothing about his freedom to decline to answer particular questions and certainly contained no suggestion that his probation was conditional on his waiving his Fifth Amendment privilege"). Therefore, in regard to an obligation to appear and to give truthful testimony,[6] the Supreme Court has explained that a probationer is in no different position from that of an

---

[6] It is the ability of the probation agent to require attendance at meetings and to require truthful answers to questions the agent asks that is most often cited in Fifth Amendment cases where the defendant is on probation. It is important to note that the United States Supreme Court has held that those facts are insufficient to cause the Fifth Amendment privilege against self-incrimination to be self-executing. Minnesota v. Murphy, 465 U.S. 420, 431 (1984).

11

ordinary witness subpoenaed to trial or to appear before a grand jury. Id. at 427. He must appear and if he chooses to speak, he must answer truthfully. Id. (noting that "the general obligation to appear and answer questions truthfully did not in itself convert Murphy's otherwise voluntary statements into compelled ones").

¶112 We have recently reaffirmed that generally, the Fifth Amendment privilege against self-incrimination is not self-executing and must be invoked. State v. Mark, 2006 WI 78, ¶2, 292 Wis. 2d 1, 718 N.W.2d 90. "The answers of [a probationer] to questions put to him are not compelled within the meaning of the Fifth Amendment unless the witness is required to answer over his valid claim of the privilege." Id., ¶26. If a probationer speaks, we examine whether the statements were incriminating and compelled because the Fifth Amendment's protection against self-incrimination will not lie unless there is testimony that is incriminating and compelled. Id., ¶16 (further citations omitted).

¶113 In Mark, use-immunity was granted for prosecution of future crimes so the statements that resulted in revocation were not incriminating, i.e., Mark's statement did not incriminate him in a crime that could be prosecuted. Therefore, the Fifth Amendment did not come into play. In addition, the statements were used in a ch. 980 commitment, which is not a criminal proceeding.

¶114 In addition, according to the Supreme Court's decision in Murphy, being revoked for a voluntary statement does not

12

violate the Fifth Amendment right against self-incrimination. Murphy, 465 U.S. at 440. All choices that a defendant makes are not choices that result in compelled, rather than voluntary, testimony.

¶115 An interesting example of such a choice is found in N. Carolina v. Alford, 400 U.S. 25 (1970). There, Alford pled to second-degree murder, rather than standing trial for the charged offense, first-degree murder, in order to avoid the possibility of being subjected to the death penalty if convicted of first-degree murder. Id. at 26-27. The Supreme Court concluded that the availability of such a choice and Alford's plea to second-degree murder did not equate with a compelled plea that would violate the Fifth Amendment. Id. at 39.

¶116 A recent court of appeals case, State v. Peebles, 2010 WI App 156, 330 Wis. 2d 243, 792 N.W.2d 212, greatly expanded Fifth Amendment protections for probationers, above the Fifth Amendment protections accorded to one who has never been convicted of a crime. In Peebles, the court concluded that Peebles was compelled[7] to give incriminating statements in the course of sex-offender treatment, even though he did not raise his Fifth Amendment privilege, none of the exceptions to the obligation to assert the privilege set out in Murphy or

---

[7] Peebles was subject to "Rules of Community Supervision" that provided his probation "may be revoked," but did not require revocation if Peebles did not comply with the rules stated therein. State v. Peebles, 2010 WI App 156, ¶3, 330 Wis. 2d 243, 792 N.W.2d 212.

13

Cunningham were present and use-immunity was not granted prior to Peebles' statements.[8]  Id., ¶¶1, 9.

¶117 Peebles is wrongly decided because it grants blanket, self-executing use-immunity to probationers simply because they could be revoked if they did not answer an agent's questions, thereby omitting the obligation to raise the Fifth Amendment privilege as Murphy has required.  See Murphy, 465 U.S. at 431 (explaining that a probationer's obligation to appear and to answer truthfully does not remove a probationer's obligation to raise his Fifth Amendment privilege).  Peebles cites Evans, 77 Wis. 2d at 235-36, for its holding.  Peebles, 330 Wis. 2d 243, ¶13.  However, in so doing, Peebles incorrectly states the legal conclusions of Evans, and it is inconsistent with the Supreme Court's holdings in Murphy.[9]

¶118 To explain, Evans arose out of a probationer's silence, not a probationer's statement.  Evans, 77 Wis. 2d at 236.  In contrast with Evans, Peebles spoke and then sought to suppress his statement.  While Evans is based on the Fifth Amendment, it preceded Murphy, which explained Fifth Amendment principles more fully than Evans.  Therefore, unless the probationer falls within one of Murphy's or Cunningham's

---

[8] No petition for review was filed in Peebles.

[9] The court did correctly explain that there would have been no Fifth Amendment violation if the sole potential consequence of admissions in regard to criminal conduct were the revocation of probation.  Id., ¶26 (citing State v. Carrizales, 191 Wis. 2d 85, 97, 528 N.W.2d 29 (Ct. App. 1995).  Stated otherwise, Carrizales explains that the use of a probationer's silence in noncriminal probation proceedings raised no Fifth Amendment issues.  Id.

14

exceptions, a probationer must raise the privilege to remain silent and be given use-immunity before he can be held to have been compelled to speak. Murphy, 465 U.S. at 427;[10] Cunningham, 431 U.S. at 806.[11]

¶119 Peebles' omission of a defendant's requirement to raise the Fifth Amendment privilege before he can speak without fear of prosecution is also inconsistent with our decision in Mark where we said that, "while an individual has a prepetition or prearrest right against self-incrimination, that right is ordinarily not self-executing and must be invoked." Mark, 292 Wis. 2d 1, ¶2 (emphasis added). See also, id., ¶24 (explaining that "Murphy reaffirms the general rule that the Fifth Amendment privilege must be asserted in all but 'certain well-defined situations.'") (citation omitted). Peebles completely ignores our decision in Mark.

¶120 The problems created by Peebles' omission of a probationer's obligation to raise the Fifth Amendment privilege

---

[10] The United States Supreme Court explained,

> Murphy was in no better position than the ordinary witness at a trial or before a grand jury who is subpoenaed, sworn to tell the truth, and obligated to answer on the pain of contempt, unless he invokes the privilege and shows that he faces a realistic threat of self-incrimination.

Murphy, 465 U.S. at 427 (emphasis added).

[11] In Lefkowitz v. Cunningham, 431 U.S. 801 (1977), removal from office was absolute if the Fifth Amendment privilege was not waived. Cunningham, 431 U.S. at 809. By contrast, revocation of probation was only a possibility for Peebles. Peebles, 330 Wis. 2d 243, ¶3.

15

have been compounded by State v. Spaeth, 2012 WI 95, 343 Wis. 2d 220, 819 N.W.2d 769, which relied in part on Peebles, even though the State conceded that Spaeth's statements had been compelled and never briefed the issue of compulsion for us. See id., ¶¶57-58. The mistaken reasoning in Peebles is further compounded by the majority opinion herein, which repeatedly mentions Peebles' overly broad statements.[12]

### C. Fifth Amendment Application

¶121 This case turns on Sahs' statements. Therefore, he falls into the second broad category of Fifth Amendment privilege cases, i.e., those defendants who speak and then seek to have their statements suppressed.

¶122 If Sahs' statement was voluntarily made, no self-executing Fifth Amendment privilege arises that precludes the statement's use in a subsequent criminal case, unless the circumstances under which the statement was made meet one of Murphy's or Cunningham's well-defined exceptions to the obligation to raise the privilege. See Murphy, 465 U.S. at 427. The Murphy/Cunningham exceptions are: (1) a probationer is in custody while questioned without Miranda warnings; (2) a probationer is threatened with significant sanctions if he remains silent.

¶123 I conclude that Sahs' oral statement to Krause was voluntarily made. There is nothing in the record that supports the conclusion that Sahs' oral statement to Krause was compelled. First, Sahs contacted Krause and asked to meet with

---

[12] Majority op., ¶¶67-72.

16

him. Second, their meeting was scheduled on a mutually convenient date. Third, they met in Krause's office and Sahs was not in custody. Fourth, there is nothing in the record to show that Sahs' statements were made in response to Krause's questions about pending charges or accusations of particular criminal activity. Fifth, there is nothing in the record to show that Sahs raised his privilege and that Krause threatened to impose economic or other sanctions capable of forcing self-incrimination. Sixth, there is nothing in the record to show that Sahs' probation was conditioned on his waiving his Fifth Amendment privilege.

¶124 That Sahs was required by the conditions of probation to give truthful answers, if he chose to speak, is no different from the obligations one has when subpoenaed to appear before a grand jury. If one chooses to speak before a grand jury to which he has been subpoenaed, one must speak truthfully. Accordingly, I conclude that Sahs' oral statement to his probation agent was voluntarily made and may be used against him in a subsequent criminal case.

### III. CONCLUSION

¶125 Sahs' incriminating, oral statement to his probation agent, made when he was not in custody, was voluntarily made without a threat by his probation agent. Accordingly, his statement was not compelled and his Fifth Amendment privilege against self-incrimination for the crime he disclosed was not self-executing. See Murphy, 465 U.S. at 436.

17

¶126 In conclusion, I write to confirm for the reader that the majority opinion does not rest on the Wisconsin Constitution, but rather, that it is based solely on the Fifth Amendment of the United States Constitution, which is the only constitutional provision that the parties argued before us. I also write to draw together foundational principles that control when the Fifth Amendment privilege against self-incrimination becomes self-executing for probationers and to draw attention to unduly broad statements in some opinions that could cause confusion if the statements were applied without a thorough consideration of all underlying legal principles. Because my analysis differs from the majority opinion's analysis but also results in the conclusion that Sahs' oral statement was not compelled, I do not join the majority opinion, but respectfully concur.